## No. 13,808.

BURTON *v.* CITY AND COUNTY OF DENVER ET AL.

(61 P. [2d] 856)

Decided June 22, 1936.   Rehearing denied October 19, 1936.

208

Mr. CLARENCE L. IRELAND, Mr. R. H. BLACKMAN, for plaintiff in error.

Mr. TELLER AMMONS, Mr. THOMAS H. GIBSON, for defendant in error City and County of Denver.

*En Banc.*

MR. JUSTICE BURKE, sitting for MR. CHIEF JUSTICE CAMPBELL, delivered the opinion of the court.

THESE parties are hereinafter referred to as Burton, the city, and Davis, respectively; The Burlington Investment Company as the Burlington Company, and the Colmex Investment Company as the Colmex Company. Burton brought this action to have tax sales held void, certificates of purchase cancelled, claims based thereon adjudged invalid, and defendants in error enjoined from asserting such. He based his right to the relief prayed for on a certificate of taxes paid, issued by the county treasurer. This certificate covered the general tax for 1928; also the Moffat Tunnel tax for that year. Davis, who bought at the sale, stood upon his certificate. In case this was overthrown he demanded recovery from the city. The Moffat Tunnel certificate is held by the Moffat Tunnel Commission. The city denied Burton's right to relief under the statute and further contended that the statute, if applicable, was unconstitutional, and also asserted that it was not a proper party. Trial was to the court, on stipulation, plus testimony, and judg-

ment against Burton. To review that judgment he prosecutes this writ.

The contentions here are as above indicated save that Davis does not appear in this court, hence we are not concerned with the issue as between him and the city. The Burlington Company owned certain Denver real estate. About September 1, 1929, it sold the tract to the Colmex Company, which first obtained from the county treasurer a "certificate of taxes due," paying therefor the statutory fee. The certificate showed the questioned . taxes "paid." They were not. Relying thereon the Colmex Company took title. When the treasurer sold, one Atler bought, for the general tax and assigned his certificate to Davis. In purchasing from the Colmex Company, Burton also relied upon the treasurer's certificate.

The statutes in question are sections 7392, 7393, and 7394, Compiled Laws 1921. The first provides that the treasurer shall, upon request and payment of his fee, "certify in writing the entire amount of taxes and assesments due upon any parcel of real estate." The second provides that such certificate, with the treasurer's receipts for the sums thereby disclosed, "shall be conclusive evidence for all purposes and against all persons, that the parcel of real estate in said certificate, and receipt or receipts described, was at the time thereof free and clear of all taxes," etc. The last reads: "For any loss resulting to the county or to any tax purchaser or taxpayer, from an error in said certificate or receipt or receipts, the treasurer and his surety shall be held liable on his official bond." Particular pleadings herein need not be specified.

1. It is said this suit should have been against the board of county commissioners and the treasurer as representatives of state, county and school district. But the city is primarily the party in interest here. By section 1, article XX of the Constitution, it is designated as the "City and County of Denver" and "by that name

may sue and defend * * * in all courts and places, and in all matters and proceedings." That the city is a proper party, and that it was here properly made so seems to us unanswerable.

2. A mere reading of the statute appears to us to place its applicability beyond question. It is said that under it the duty of the treasurer is positive only, i. e., to certify taxes due; not negative, i. e., to certify no taxes due. That construction appears to convert the act into an absurdity, a construction forbidden by a well recognized rule, unless no other is possible. The purpose of the act seems clear. Few taxpayers are capable of personally determining from the public records the amount, if any, of their taxes due, or those due on property they may contemplate acquiring. To do this accurately often becomes a matter of vital necessity. For instance, the sum here involved is over $1,400. Except the legal duty rested upon someone to supply the requisite information, and except that information, when supplied, could be safely relied upon, transactions in real estate would often be too hazardous to be engaged in save by gamblers. But if the desired information could be obtained only when a tax was due of what avail the remedy? Must we believe the purpose of the legislature was to afford relief against a certificate which erroneously stated that $1.00 was due when in fact the amount was $1,000, and no relief against a certificate which erroneously stated that no taxes were due when in fact the amount was $1,000?

3. The validity of the statute presents a more serious question. It is said to conflict with section 7179, Compiled Laws 1921, which provides that taxes on real estate "shall be a perpetual lien upon such real estate until * * * paid." But statutes are of equal dignity save that when in irreconcilable conflict we read into the last a repeal by necessary implication. Said sections 7179 and 7392 first appear as portions of the revenue act of 1902, the first being section 3, page 43, and the second

section 147, page 118, of chapter 3 of the acts of that year. They must be construed in pari materia and if possible, and we think it is, reconciled. This rule applies with peculiar force to acts passed by the same legislature, and doubly so if approved at the same time. 59 C. J., p. 1053, §622. Add to this the rules that particular statutes prevail over general, and later provisions over former, and we learn that these together mean simply that the tax shall be a perpetual lien upon the real estate until paid, or until the treasurer certifies payment. There is, however, another construction which reconciles the two. It has been well said that the word "paid" is often very loosely used and is always liberally construed. *Sheet's Estate,* 52 Pa. 257, 268. This is true of statutes as well as of private writings, hence the requirement of said section 7179, that the tax remained a lien until paid, may well have been considered by the legislature as met by the further provision that the loser, under a false certificate, was given, as payment, a claim for the amount against the treasurer's bond.

█ █ It is further contended that if interpreted and applied as we have above decided, then the statute conflicts with sections 3, 8, 9, and 10 of article X, and sections 25 and 38 of article V of the state Constitution. Said section 3 provides that taxes shall be uniform and collected under general laws; section 8, that neither municipalities, persons nor property shall be released or discharged from taxes "for state purposes"; section 9 that the power to tax corporations and corporate property "shall never be relinquished or suspended"; section 10 that all corporations shall be subject to taxation; section 25 that special laws shall not be passed; and section 38 that "No obligation or liability of any person, association or corporation, held or owned by the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released or postponed, or in any way diminished by the general assembly, nor shall such liability or obligation be extinguished except by payment

thereof into the proper treasury." The most casual reading of these sections discloses that none can possibly be applicable unless it be the last. Since article V deals with the legislative department, and article X with taxation, and since no mention is made of taxes in said section 38, it is possible the subject is not included. But, assuming the contrary, the city says that a tax is both a liability and an obligation, citing numerous authorities. Tax liens may, however, in the very nature of things, be extinguished in other ways than by actual payment thereof in cash into the treasury; such, for instance, as the foreclosure of a superior tax lien, and this is a species of payment. *Bennett v. Denver,* 70 Colo. 77, 197 Pac. 768. Section 32 of article IV of the Constitution of New Mexico is almost an exact duplicate of said section 38. In 1921 the legislature of that state passed an act providing that taxes accruing prior to January 1, 1910, in the absence of sale to anyone other than a county, "shall be presumed to have been paid, and any tax lien therefor is hereby discharged." The New Mexico Supreme Court held the statute no violation of the Constitution and with its reasoning and conclusions we agree. *State v. Montoya,* 32 N. M. 314, 255 Pac. 634. The only distinction attempted by the city here fails when we remember that the New Mexico statute merely created a presumption of payment and discharged the lien, leaving the taxing authority nothing, whereas in this state the liability therefor is fixed on the treasurer and his bondsmen.

The judgment is reversed and the cause remanded with directions to enter judgment in harmony herewith.

Mr. Justice Bouck not participating.