### No. 14,898.

B. K. SWEENEY ELECTRICAL COMPANY *v.* POSTON, DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF POSTON PONTIAC CO.

(132 P. [2d] 443)

Decided November 2, 1942. Rehearing denied December 21, 1942.

Mr. John C. Young, Jr., for plaintiff in error.

No appearance for defendant in error.

Mr. Gail L. Ireland, Attorney General, Mr. George K. Thomas, Assistant, amici curiae.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THE action, in which the proceedings are here under review, was for replevin of certain tools, accessories and servicing equipment for the lubrication of automobiles, previously used by one Dwyer in the conduct of a business known as the "Ernie Dwyer Pontiac Company" in Colorado Springs.. Plaintiff in error, plaintiff below, claimed under a chattel mortgage given it by Dwyer for the balance of the purchase price of the personal property in controversy. In justification of his possession the answer of defendant asserted title by purchase at a sale under a distraint warrant issued by the state treasurer for delinquent sales and service taxes theretofore collected by Dwyer from his customers for goods sold and services performed, but which he had not remitted to the state as required by pertinent statutes. By its replication the mortgagee denied certain of the new matter contained in the answer and pleaded six special defenses challenging the validity of the tax, the tax lien and sale thereunder upon constitutional grounds. Demurrers by defendant to such six special defenses were sustained and after a stipulation as to certain facts not covered by the pleadings, the court entered judgment in favor of defendant and against the plaintiff mortgagee. The latter prosecutes this proceeding in error. Because of the interest of the state in the important legal questions involved, the Attorney General in his official capacity, as amicus curiae, participated in the trial below and appears here in the same relation supporting the position of the defendant.

The taxes in concern became due the state under the 1937 sales and service tax acts (chapters 230 and 240, S.L. '37) which were in effect when the chattel mortgage here involved was given. The distraint and sales proceedings were conducted under the amendatory sales and service tax acts of 1939 (section 3, chapter 148, and section 12, chapter 158, S.L. '39, being section 25, chap-

ter 144, and section 12, chapter 148A, 1941 Cum. Supp., '35 C.S.A.), which became operative at a date subsequent to the recording of the mortgage.

There is no dispute as to the amount of tax due from Dwyer, the mortgagor, and it is conceded that at the time of the distraint levy the chattels involved were in his possession and being used by him in conducting his business. The 1937 sales tax act provides: "The tax imposed * * * shall be a first and prior lien upon the goods and property of any retailer, and shall take precedence over other liens or claims of whatsoever kind or nature; * * *." Section 24, chapter 230, S.L. 1937. The 1937 service tax act recites: "The tax imposed by this act shall be a first and prior lien upon the goods and property of any person rendering or performing services or other person liable for the payment of taxes under this act, and shall take precedence over other liens or claims of whatsoever kind or nature; * * *." (Section 11, chapter 240, S.L. 1937) If at all pertinent, which we do not determine, the 1939 acts (section 2, chapter 148, and section 11 (a), chapter 158, S.L. 1939) in continuing, inter alia, the priority of the tax lien as to the goods and business fixtures of the retailer, in which category the chattels herein involved fall, in no manner impaired the status of the lien imposed under the 1937 acts.

Notwithstanding that in Colorado, under the common-law rule here attaining, the legal title to chattels is regarded as passing to the mortgagee by a mortgage thereon, there is a right of redemption in the mortgagor until foreclosure which leaves in the latter an interest, as property, which he may sell, encumber or transfer subject to the mortgage, or which may be levied on under execution against him. Accordingly, in this jurisdiction controversies between a lien claimant and a chattel mortgage holder concerning rights in the property covered thereby, generally have been treated as contests between lien claimants with the disposition dependent upon the priority of their respective liens.

This theory has been followed in litigation involving the rights of a chattel mortgagee as against an agistor's lien (*Rohrer v. Ross,* 53 Colo. 328, 125 Pac. 489; *McKee v. Menzel,* 70 Colo. 308, 201 Pac. 52); a mechanic's lien (*Hawkes v. First National Bank,* 75 Colo. 47, 224 Pac. 224); a rent lien (*Morse v. Morrison,* 16 Colo. App. 449, 66 Pac. 169), and judgment execution liens (*Williams v. Mellor,* 12 Colo. 1, 19 Pac. 839; *Robinson v. Wright,* 90 Colo. 418, 9 P. (2d) 618). Likewise, upon numerous occasions, we have adjudicated the conflicting claims of two or more mortgagees of the same chattel property on the basis of the priority of their respective liens. Thus, in the case at bar, it must be considered that the claims asserted by both the plaintiff and the state were in the nature of liens on the property of Dwyer. In this view, counsel for the mortgagee correctly states: "The fundamental issue in this case is the priority of liens as between the liens of the State for sales and service taxes and the lien of plaintiff's said purchase money mortgage." We may add that questions respecting the validity of the sale under the distraint warrant also are involved.

In the case of *People v. Denver,* 85 Colo. 61, 273 Pac. 883, wherein it was held under existing Colorado statutes that a lien for gasoline taxes, an excise levy, as are the sales and service taxes herein involved, was prior to the lien for general taxes due a city, it being recited in the opinion: "The question of tax liens is for legislative determination. The legislature may or may not make taxes a lien upon property; if it does not do so, no lien exists. It also may determine the priority of tax liens."

Recently, in the case of *Denver v. Armstrong,* 105 Colo. 290, 97 P. (2d) 448, we held that, after the effective date of the 1937 sales tax law, any lien which attached for general taxes on personal property, was inferior to the lien created by the Sales Tax Act.

Concerning statutes which directly provide that the

lien for taxes shall be superior to all other liens and claims, as does the 1937 act herein involved, the Court of Appeals in the opinion of *Gifford v. Callaway*, 8 Colo. App. 359 (46 Pac. 626), at page 367, states: "Wherever there is such legislation, it is always conceded to have the force and effect contended for by the defendants in error, and to give the government a lien superior to that which the citizen holds by virtue of the prior encumbrance. Such legislation would not be unconstitutional. Governmental necessities must be permitted to override individual equities, and the sovereignty must be accorded the broadest powers for the conservation of its own existence." In that case as a matter of statutory construction, and not upon constitutional grounds, it was held that personal property taxes levied against a landowner subsequent to the execution of an encumbrance on his land, were not superior to the latter security.

■ "The legislature has power to make personal property taxes a prior lien over chattel mortgages and has done so in some cases. A statute making the tax lien superior is not in contravention of any constitutional inhibition as applied to mortgages executed after the statute took effect. As to them the statute becomes a part of the contract and the mortgage must be treated as though its provisions had been incorporated therein. * * *." 10 Am. Jur., p. 860, §220.

In *Minneapolis Threshing Machine Co. v. Roberts County*, 34 S.D. 498, 149 N.W. 163, L.R.A. 1915D, 886, a much cited case on the subject, it was held, under a statute making all taxes upon personal property a first lien on all the personal property of the person against whom they were assessed, that such personal tax took precedence, as to the entire amount levied, over an existing chattel mortgage given to secure the purchase price of a particular article of machinery. Relating to contentions similar to those made by the mortgagee here, the South Dakota Supreme Court said (page 503):

"It is argued by appellant that, if the statute under consideration is given the construction contended for by respondent, it will burden personal property with secret liens to an extent to be abhorred; that it will act as a restraint upon the free exchange and alienation of personal property and render it unsafe to deal in personal property; that it will violate contract obligations and result in the taking of property without due process of law. While the latter objection might be good in regard to contracts that were made prior to the enactment of the statute, it is without force when applied to contracts entered into since its enactment. The results complained of are presumed to have been in contemplation of the parties when the contract was made. If the statute is obnoxious because it acts as a restraint upon the free exchange or alienation of personal property, or renders it unsafe to deal in such property, then it should be repealed or amended, but this relief must be sought from the legislature and not from the court."

In *Burfiend v. Hamilton,* 20 Mont. 343, 51 Pac. 161, it was held that the legislature had power to enact laws declaring license taxes, which are akin to excise taxes, a paramount lien on the property used in a business and that such a tax lien took precedence over a duly recorded chattel mortgage on such property. In reaching this conclusion that court stated:

"It would greatly embarrass the state in the collection of its revenues if it could not, by appropriate legislation, secure to itself the payment of taxes by making them a first lien on the property of the person whose duty it is to pay the same, whether the tax be a property or a license tax. No thoughtful person, we think, would contend that the state, in a case like the one before us, should be driven to the necessity of paying off mortgages on property subject to taxation, or a lien for taxes, before it could collect its revenues. Any person situated like Hirschman in this case, who wished to avoid the payment of legal taxes, would only have to execute a

mortgage on the property used in his business, in order to compel the state either to pay off the mortgage or lose the taxes due.

"We cannot consent to a construction of the law that would produce such disastrous results to the state. When the mortgagees took the mortgage they rely on in this case, they knew what the law was. They will not be permitted to say that they did not know that the law made the license tax due from the mortgagor a first lien on the property he was using in his business as retail liquor dealer. The law entered into the mortgage contract. (Jones, Chat. Mortg. §474.)

"The lien fixed by the statute is different from an ordinary incumbrance. (Cooley, Tax'n (2d Ed.) p. 445; *Osterberg v. Union Trust Co.*, 93 U. S. 424.) We are clearly of the opinion that the lien for the license tax due from Hirschman took precedence on the property in controversy over the mortgage lien of the plaintiffs."

The foregoing quoted statements from the authorities demonstrate the impotency of the mortgagee's contention that the statutory lien was secret and so without validity. We fail to perceive that the provisions of section 16 (a) of the sales tax act (S.L. 1937, p. 1088) prohibiting the state treasurer or his employees from divulging "any information gained * * * from any return" filed by the taxpayer, strengthens the argument of mortgagee's counsel on this point. The mortgagee was charged with notice of the statute and its provisions, and by operation of law these became a part of the mortgage contract. In effect, the incorporation in the mortgage of a clause whereby the mortgagor agreed "to promptly pay when due all taxes, license fees or other public charges that may be levied against or upon said chattels and to satisfy any and all liens that may be assessed upon or against the same," is a strong indication that the mortgagee so recognized when the instrument was prepared.

██ ██ On the premise that under both the sales and service tax law, the tax is imposed on the consumer of the goods sold or the recipient of the service rendered and is collected by the retailer as trustee for the state (section 25, chapter 230, section 12, chapter 240, S.L. 1937), the mortgagee next contends that when Dwyer collected the tax from his customers the tax was paid to the state and no lien therefor could be asserted thereafter by the state. A retailer who collects such tax by virtue of the last mentioned sections is a trustee and answerable to the state for such moneys until they are paid over to the state treasurer. See, *Wade v. State,* 97 Colo. 52, 47 P. (2d) 412. The state is not obligated to resort to the ordinary processes available for the collection of private debts to enforce its claims against defaulting collectors of taxes but may proceed in a summary way, as by warrant of distress. *Murray v. Hoboken Land Co.,* 18 How. 272 (U.S.), 15 L. Ed. 372. Since the funds in the hands of the retailer still remain tax money due the state, we discern no valid reason why the power of the legislature to impose a lien on the collector's property should be different or less than its authority to so legislate as against the taxpayer himself. Obviously, a different situation would arise in the event the state attempted to recollect from the consumer a tax he already had paid to the retailer. As to the question involved in the proceeding at bar, the case of *Burton v. Denver,* 99 Colo. 207, 61 P. (2d) 856, 107 A.L.R. 564, is without pertinency.

██ Counsel for the mortgagee further asserts that the sales and service tax acts violate due process requirements in that the tax is imposed without notice or hearing to the taxpayer. This principle has no application in the case at bar. "It has been stated by the United States Supreme Court that the right to notice and hearing does not extend to taxes of every description, but only to such as involve the exercise of quasi-judicial power in the determination of amount. This amounts

to the same thing as saying that notice and an opportunity to be heard are necessary to due process of law under statutes imposing a tax in cases other than those in which the tax may be computed by a simple mechanical calculation. Therefore, in the case of an excise not dependent upon the valuation of property and in which there is no discretion as to the amount, no notice of the assessment or levy of the tax is necessary." The taxes herein involved come within the latter category. 12 Am. Jur., p. 330, §640. See, also, *People, ex rel. v. Letford,* 102 Colo. 284, 79 P. (2d) 274.

We now come to the final contentions of the mortgagee. Under the 1937 acts no specific procedure was provided for the enforcement of the liens imposed thereby. The 1939 acts, which did not become operative until after plaintiff's mortgage was recorded, provided for a summary method of enforcement by distraint and sale by the state treasurer. It is stipulated that the sale under which defendant claims was conducted in strict accord with the procedure provided by the 1939 acts. The mortgagee asserts first, that these latter acts can have no retroactive effect and that if such is accorded, the obligation of his contract is impaired; second, that in giving to the director of revenue the power of distraint, levy and sale, the legislature unconstitutionally attempted to confer judicial powers upon the executive branch of government.

The first point is disposed of adversely to the contention of the mortgagee by our pronouncements in *Milliken v. O'Meara,* 74 Colo. 475, 222 Pac. 1116, wherein we state: "It is asserted that the act is retrospective; but, since it merely provides a new method of collection of taxes which are already a lien upon the chattel and for which the chattel might be sold at any time, it adds no new burden or duty, and therefore has no retrospective character, even as to machines purchased before it took effect, as in the matter before us." "No property is taken, no property right is impaired, be-

cause the property itself is shown by the alternative writ to have been assessed and therefore subject to the lien of the taxes in question when it was purchased. It could not have been procured by the present owner free from the lien. 37 Cyc. 1146, 1147. This lien, by the terms of the above quotation, subsisted without execution or distraint. The statute of 1923 is merely a method of enforcing the discharge of that lien by the payment of the back taxes."

Similarly, in the case at bar the lien involved existed under the 1937 act when the mortgage was taken and even by foreclosure, the tax not having been paid, the mortgagee could not have procured the property free from the lien.

 As to the second point, the mortgagee relies principally upon the case of *Johnson v. Diefendorf,* 56 Ida. 620, 57 P. (2d) 1068, wherein the portion of the Idaho sales tax statute giving to the commissioner of finance the summary power of distraint and sale for taxes and limiting the right of action by taxpayers against the state, was held unconstitutional as transgressing the due process clause, and attempting to confer judicial powers upon the commissioner of finance. The Idaho Supreme Court was particularly critical concerning the section of the statute limiting the taxpayer's recourse to judicial action, which is not contained in the Colorado act, and of the provisions giving the commissioner the power to assess penalties arbitrarily. Since, in the case at bar, in the language of counsel for the mortgagee, "There is no dispute * * * as to the amount of the * * * penalties," the mortgagee is in no position to question our statute in the latter particular. Stripped of these features the Idaho case is ineffective as an authority herein.

In *Goldsmith v. McAnally,* 92 Colo. 384, 20 P. (2d) 1009, we held a county treasurer's distraint warrant to enforce the payment of delinquent personal property taxes, was a nonjudicial process. Had it been conceived that the issuance of such involved the performance of a

judicial function, the conclusion announced could not have attained. Under the conditions extant in the case at bar we have no doubt that the mortgagee's contention in this respect is unfounded. See, Cooley on Taxation, vol. 3 (4th ed.), p. 2651, §1344, and *Murray v. Hoboken Land Co., supra.*

The judgment is affirmed.

MR. CHIEF JUSTICE YOUNG not participating.