**D. J. YOUNG and D. J. Young Corporation, Plaintiffs-Appellees,**

v.

**GOLDEN STATE BANK, Defendant-Appellant,**

and

**William V. Williams, Bar One Corporation, Jefferson Bank & Trust, Golden Restaurants, Inc. and John D. Nelson, Defendants.**

**No. 79CA0496.**

Colorado Court of Appeals, Div. II.

July 30, 1981.

1054

Robert W. Caddes, Denver, for plaintiffs-appellees.

Bradley, Campbell & Carney, William J. Campbell, Golden, for defendant-appellant.

BERMAN, Judge.

In this action to enforce a security interest in business equipment, which interest was created under the terms of Article Nine of the Uniform Commercial Code, § 4–9–101 to § 4–9–507, C.R.S.1973, defendant Golden State Bank (Bank), the escrow holder, appeals from a trial court judgment for plaintiff, the secured party. We affirm in part, reverse in part, and remand.

This appeal follows the third trial of this cause. This Court reversed the first trial court judgment, insofar as it dismissed the secured party's claim against the Bank, and remanded for retrial. *Young v. Golden State Bank*, 39 Colo.App. 45, 560 P.2d 855 (1977). Upon remand, the trial court again dismissed the secured party's claim. On appeal after that first retrial, this Court once again reversed and remanded for a second retrial limited to the issue of damages. *Young v. Golden State Bank*, 41 Colo.App. 480, 589 P.2d 1381 (1978). The facts of this case as stated in the course of those previous opinions are here augmented or iterated where necessary.

The determinative issues on this appeal involve a contest between (1) plaintiff's unperfected Article Nine security interest, and (2) a federal tax lien, a state tax lien, and a state tax garnishment.

### THE FEDERAL TAX LIEN

The Bank contends that plaintiff's security interest was subordinate to an Internal Revenue Service lien in the amount of $21,254.81. We disagree.

By federal statute, an Internal Revenue Service lien as to which proper notice has been filed takes priority over an Article Nine security interest which has not been perfected before the I.R.S. filing. *See* 26 U.S.C.A. § 6323; § 4–9–301(1)(b), C.R.S. 1973. However, such a lien operates only against the taxpayer named in the lien and notice. *See, e. g., F.P. Baugh, Inc. v. Little Lake Lumber Co.*, 297 F.2d 692 (9th Cir. 1961), *cert. denied*, 370 U.S. 909, 82 S.Ct. 1256, 8 L.Ed.2d 404; *see also Haye v. United States*, 461 F.Supp. 1168 (C.D.Cal.1978); *United States v. Ruby Luggage Corp.*, 142 F.Supp. 701 (D.C.N.Y.1956); *United States v. Diamond*, 142 F.Supp. 441 (D.C.N.Y. 1956); *Chicago Federal Savings & Loan Ass'n v. Cacciatore*, 33 Ill.App.2d 131, 178 N.E.2d 888 (1961), *aff'd*, 25 Ill.2d 535, 185 N.E.2d 670 (1962).

Here, the security interest in question was in certain business equipment of Bar One Corporation (Bar One). Prior to the time Bar One's assets were liquidated, however, the I.R.S. lien notices, upon which the Bank premises its argument, named, *inter alia*, Johnson Management Corporation, but did not name Bar One. On the face of these facts, therefore, the I.R.S. lien did not attach to the property in which plaintiff held his security interest.

The Bank contends, however, that Bar One and Johnson Management operated from the same address, were assessed taxes under the same taxpayer identification number, and were regarded by some people as interchangeable entities. From these assertions the Bank concludes that, at least for the purposes of an I.R.S. lien notice, Johnson Management and Bar One were different names for the same business entity. The trial court, however, found that the business equipment in question was owned by Bar One; the trial court made no finding that Johnson Management had any interest in the equipment or was identical with Bar One. Where, as here, the trial court's factual findings are consistent with the evidence, such findings are binding on

review. *Linley v. Hanson*, 173 Colo. 239, 477 P.2d 453 (1970).

The Bank has referred us to no authority which, given the existence of the facts upon which the Bank's argument is premised, would require a holding *as a matter of law* that Bar One and Johnson Management are identical. Thus, we conclude that *Linley* controls. *See F.P. Baugh, Inc. v. Little Lake Lumber Co., supra.* We hold, therefore, that the I.R.S. lien here in question did not attach to the property of Bar One. Consequently, the lien did not attach to the business equipment in which plaintiff claims a security interest, and the trial court was correct in ruling that such security interest was not subordinate to the I.R.S. lien.

## THE STATE TAX LIEN

Next at issue on this appeal is a state tax lien in the amount of $5,041.86, which represents amounts owing from Bar One for, *inter alia*, sales tax and withholding of income tax. On appeal, plaintiff concedes the priority of the state's lien to the extent that it has been shown to reflect liability for other than sales tax. Since the record shows only that $360.39 of the amount due the state from Bar One was for non-sales-tax liability, plaintiff therefore concedes the state's priority only as to that amount. Thus, for purposes of this appeal, we treat the balance of the lien, $4,681.47, as representing Bar One's sales tax debt.

█ The Bank contends that liens for state sales taxes are "first and prior lien[s] upon the goods and business fixtures of or used by any retailer" and that such liens ,"take precedence on all such property over other ... claims of whatsoever kind or nature." *See* § 39–26–117, C.R.S.1973; *see also B.K. Sweeney Electrical Co. v. Poston*, 110 Colo. 139, 132 P.2d 443 (1942). The Bank insists, therefore, that plaintiff's security interest is junior to the sales tax component of the state tax lien here in question. The Bank thus argues, in effect, that the trial court erred in ruling that the Bank's payment of that amount from the escrow funds was in violation of plaintiff's security interest. We agree.

█ The trial court read § 39–26–117(2), C.R.S.1973, as erecting an exemption, applying to people in plaintiff's position, from the operation of the statute's first and prior lien provisions. We conclude, however, that here such exemption does not apply to plaintiff.

First, § 39–26–117(2), C.R.S.1973, reads in part: "all [sales] taxes ... shall be a prior and preferred claim against all property of [the] taxpayer, *except as to preexisting claims ... of a bona fide mortgagee ... whose rights shall have attached prior to the filing of the notice ... on the property of the taxpayer, other than the goods ... and business fixtures of such taxpayer."* (emphasis added)

It is undisputed that plaintiff's claim attached prior to the Department of Revenue's filing of notice. Further, we assume without deciding that an Article Nine secured party constitutes a "bona fide mortgagee" within the meaning of § 39–26–117(2). *See National Bank of Commerce v. Alabama Football, Inc.*, 20 U.C.C. Reptr. 751 (U.S.Dist.Ct., N.D.Ala., May 11, 1976). As we read the provision, however, the exemption from the first and prior lien provisions does not extend to "the goods ... and business fixtures" of plaintiff's debtor. Thus, the trial court erred in ruling that plaintiff's security interest in business equipment was superior to the sales tax component of the state tax lien.

Our construction of § 39–26–117(2) is reinforced by the fact that the exemption was in force at the time *B.K. Sweeney Electrical, supra*, was decided. *See Colo. Sess. Laws* 1939, § 2 at p. 504. We must assume that the *B.K. Sweeney Electrical* Court had the statutory exemption in mind when it held that a lien for sales and service taxes took priority over a chattel mortgage which had previously attached. Nor do we perceive the language of § 4–9–201, C.R.S. 1973, or the circumstances surrounding the promulgation in Colorado of the U.C.C. to warrant a conclusion that, by enacting § 4–9–201, the General Assembly intended

to limit the first and prior lien provisions of § 39–26–117. *See* § 4–9–201, C.R.S.1973 (Official Comment); *see also* § 4–9–102(2), C.R.S.1973. Furthermore, although Article Nine of the U.C.C. supersedes prior Colorado law governing chattel mortgages, *see* §§ 4–9–101 and 4–9–102, C.R.S.1973 (Official Comments), an Article Nine security interest is not so functionally dissimilar to the "chattel mortgage" under consideration in *B.K. Sweeney Electrical* as to render the holding in that case inapplicable under the Code.

Given our holding that the sales tax component of the state tax lien had priority over plaintiff's security interest, and given that plaintiff concedes the state's priority as to the balance of the lien, the Bank was entitled to pay the full $5,041.86 amount of the state tax lien.

### THE STATE TAX GARNISHMENT

The Bank also argues in effect that the trial court erred in ruling that the Bank improperly paid $2,033.82 from the escrow funds in response to a Department of Revenue sales and withholding tax garnishment in that amount. The Bank, citing *B. K. Sweeney Electrical*, premises its argument upon the same "first and prior" lien theory we have previously discussed with respect to the sales tax component of the $5,041.86 lien.

We need not, however, determine in the instant case whether the garnishment in question would enjoy the same priority as did the sales tax component of the previously discussed lien. Here, on April 1, 1974, the Department of Revenue, in response to the Bank's payment of $5,041.86, issued the Bank a receipt discharging Bar One from further liability for "any and all County and State Sales and Withholding Taxes now [April 1, 1974] due and owing . . . ."

■ Service of the garnishment in question was made on May 13, 1974, after the Bank and Bar One were discharged from the liability. Because we have upheld the Bank's payment of the $5,041.86 upon which the discharge was predicated, the discharge operates as a bar to the garnishment. Ac-

cordingly, we affirm the trial court judgment as to the garnishment.

■ The Bank contends finally that it was merely the escrow holder of the proceeds of liquidation of Bar One. The Bank thus argues that if any funds were paid from the escrow corpus to parties whose interests were junior to plaintiff's security interest, then liability is chargeable to the parties to the escrow agreement, and not to the Bank as escrow holder. This argument, though, was not raised in the Bank's motion for a new trial; accordingly, it may not be considered on appeal. C.R.C.P. 59(f).

The judgment is affirmed relative to its treatment of the I.R.S. lien and as to its treatment of the garnishment. The judgment is reversed as to its treatment of the sales tax debt, and, since the trial court has already disallowed plaintiff's claim as to the $360.39 which plaintiff concedes on appeal, the cause is remanded with directions to reduce the judgment by $4,681.47.

SMITH and VAN CISE, JJ., concur.