**DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY, A Delaware corporation, doing business in Colorado, Plaintiff-Appellant,**

v.

**WINTER PARK RECREATIONAL ASSOCIATION, a Colorado non-profit organization; City and County of Denver, a municipal corporation of the State of Colorado; Moffat Tunnel Improvement District, a special district of the State of Colorado; Moffat Tunnel Commission, a special managing and controlling board of the Moffat Tunnel Improvement District of the State of Colorado; City and County of Denver, acting by and through its Board of Water Commissioners; First National Bank of Denver, N.A.; First National Bank of Denver, N.A., as Trustee for certain bond holders; Board of County Commissioners, County of Grand, State of Colorado, a body corporate and agency of the State of Colorado, Defendants-Appellees.**

No. 83CA1179.

Colorado Court of Appeals,
Div. III.

July 11, 1985.

Rehearing Denied Aug. 15, 1985.

Certiorari Denied Nov. 18, 1985.

Gorsuch, Kirgis, Campbell, Walker & Grover, Joseph M. Montano, Leslie A. Fields, Vicki J. Fowler, Denver, for plaintiff-appellant.

Phelps, Hall, Singer & Dunn, Richard P. Hall, Stephen A. Hagen, Denver, for defendants-appellees Winter Park Recreational Assn. and City and County of Denver.

Holme Roberts & Owen, Robert A. Backus, Denver, Anthony J. DiCola, Hot Sulpher Springs, for defendant-appellee Board

of County Commissioners, County of Grand, Colorado.

Charles W. Ennis, Neef, Swanson, Myer & Clark, Robert Swanson, Rendle Myer, Denver, for defendants-appellees Moffat Tunnel Improvement Dist. and Moffat Tunnel Comm.

No appearance for defendants-appellees First Nat. Bank of Denver, N.A. and First Nat. Bank of Denver, N.A., as Trustee for certain bond holders.

BERMAN, Judge.

Plaintiff, Denver and Rio Grande Western Railroad Company (Rio Grande), appeals from a trial court judgment granting the motion to dismiss its first amended complaint sought by defendants, Winter Park Recreational Association, City and County of Denver, and Moffat Tunnel Improvement District and Commission. We affirm.

This appeal essentially concerns a dispute between Rio Grande and Winter Park regarding the use of a portion of the west approach to the Moffat Tunnel referred to as the "Evans Tract." This parcel is owned in fee by the defendant District. Rio Grande contends on appeal (1) that the agreements between the Commission, Denver, and Winter Park allowing the use of the Evans Tract for recreational purposes are null and void as they contemplate uses for other than statutorily authorized purposes; (2) that Rio Grande's easement for railroad purposes to the Moffat Tunnel and its approaches is exclusive as against any inconsistent user; (3) that Rio Grande has the legal authority to institute a condemnation action against Winter Park's interest in the Evans Tract; and (4) that the trial court's conclusion that it lacks jurisdiction over the matter until such time as the Commission holds a hearing and issues a ruling is erroneous.

In 1922, the Colorado General Assembly enacted the Moffat Tunnel Act (Act) creating the Moffat Tunnel Improvement District and Commission to provide for the construction of a transportation tunnel through the Continental Divide which would connect the eastern and western portions of the state. See § 32–8–101, et seq., C.R.S. Pursuant to its statutory authority, the Commission, on January 6, 1926, entered into a contract with Rio Grande's predecessor, the Denver and Salt Lake Railway Company, for the use of the tunnel, its approaches, and equipment. In 1939, the Commission entered into an agreement with Denver to allow the development of the land immediately west of the tunnel known as Winter Park.

In 1950, Denver adopted an ordinance which approved an agreement between Denver and Winter Park authorizing Winter Park to act as manager of the Winter Park Recreational Area. In 1980, the District entered into an agreement directly with Winter Park which superseded the earlier agreements between the District and Denver. Winter Park acknowledges, however, that pursuant to the Act and the various agreements between the District and Rio Grande, Denver, and Winter Park, its rights to use the Evans Tract are junior and subordinate to those of Rio Grande.

In approximately June of 1980, Winter Park began constructing base ski lodge facilities within 100 feet of the tracks owned and operated by Rio Grande. This construction led to the initiation of this action by Rio Grande in December 1980. Rio Grande sought, among other relief, an injunction enjoining Winter Park's further construction, and a declaration of the rights of the parties to the land within 100 feet of the railroad track, or alternatively, a condemnation of any leasehold interest Winter Park might have within the 100 foot mark of Rio Grande's railroad lines.

The trial court concluded that the questions regarding the Commission's authority to issue recreational use permits, and Rio Grande's claim that it had acquired an exclusive easement against inconsistent users, or alternatively, that it had a right

to condemn the leasehold interest of an inconsistent user, were issues to be resolved by the court as a matter of law. The court determined, however, that it was without jurisdiction to grant Rio Grande declaratory relief on its claim of interference by Winter Park, finding that the issue whether Winter Park's use was inconsistent with that of Rio Grande was a question of fact to be determined initially by the Commission under § 32–8–108(2), C.R.S.

I.

Rio Grande first contends that any agreements between the Commission and Denver or Winter Park authorizing use of the District's property for recreational purposes are null and void because such use has not been authorized by the General Assembly. We disagree.

Rio Grande argues that the Commission does not have the power under the Act to contract for the use of the District's property for purposes unrelated to transportation and communication, and that to permit the Commission to enter into such contracts results in the District's functioning as an unlimited district contrary to Colorado law. We, however, do not adopt such a narrow interpretation of the Act.

A.

Resolution of this and other issues raised on appeal requires an analysis of the pertinent provisions of the Moffat Tunnel Act. Section 32–8–101, C.R.S., sets forth the purpose of the tunnel, declaring that a transportation tunnel through the Continental Divide would reduce the commercial barrier separating the eastern and western portions of the state, would facilitate communication, would promote the health, comfort, safety, convenience, and welfare of the People of the state, and would be of special benefit to the property within the boundaries of the improvement district. Section 32–8–103, C.R.S., creates a five member elected commission to control the

district, and § 32–8–107, C.R.S., sets forth the powers of the commission.

Section 32–8–108(1), C.R.S., provides that the Commission has the power to enter into contracts with persons and private and public corporations to give them:

"[T]he right to use said tunnel, its approaches and equipment, for the transmission of power, for telephone and telegraph lines, for the transportation of water, for railroad and railway purposes, *and for any other purpose to which the same may be adapted.* No such contract shall be for a longer period than ninety-nine years, and *the tunnel shall be put to the largest possible number of uses consistent with the purposes for which such improvements are constructed.*" (emphasis supplied)

Section 32–8–119, C.R.S., provides that the tunnel together with its approaches and equipment shall be owned perpetually by the District, and § 32–8–120, C.R.S., requires that the Act be liberally construed to effect its purposes.

■ The primary purpose of the Act was to construct a tunnel to be put to the largest number of uses. *Moffat Tunnel Improvement District v. Denver & S.L. Ry.*, 45 F.2d 715 (10th Cir.1930). In order to insure that the purposes of the Act be properly effectuated, the Act vested the Commission with broad powers and provided that the Act be liberally construed. *Moffat Tunnel Improvement District v. Denver & S.L. Ry., supra.*

Although it appears that the main purpose of the Act was to construct the tunnel for transportation and communication, a fair reading of the entire Act supports Winter Park's assertion that the General Assembly intended the tunnel and its approaches to be put to the largest number of possible uses.

■ Section 32–8–108(1) specifically enumerates uses of the tunnel and its approaches which would generally be con-

sidered transportation or communication purposes. However, the statute also provides that the tunnel and its approaches be used "for any other purpose to which the same may be adapted." Following the legislative mandate of liberal construction, we interpret this provision to mean that the Commission has the power to contract for uses other than those enumerated, if the contracted use is one to which the tunnel and its approaches may be adapted, and if it is "consistent with" Rio Grande's railroad use of the property.

■ We note that Winter Park has operated a ski area on portions of the Evans Tract since 1939 and that Rio Grande, or its predecessor, has conducted railroad operations on portions of the Evans Tract since 1926. Prior to the instant action, there had been no litigation regarding the joint use of this property. Thus, there has been no factual determination as to whether Winter Park's present use of the property is inconsistent with Rio Grande's use. Based upon our interpretation of the statute, however, we conclude that the agreement is not void on its face. So long as Winter Park's recreational use of the property does not interfere with Rio Grande's use, the contract is a valid exercise of the Commission's statutory powers. *See Moffat Tunnel Improvement District v. Denver & S.L. Ry., supra.*

### B.

Since we have concluded that the District has the authority, by statute, to enter into contracts for the right of use of the tunnel and its approaches for purposes other than transportation and communication, we disagree with Rio Grande's contention that the Commission, by permitting Winter Park to use the Evans Tract for recreational purposes, has violated provisions of *Colo. Const.* art. XX, and has usurped the legislative function of determining what is in the best interest of the health, safety, and welfare of the District's inhabitants.

### II.

Rio Grande next contends that it has an easement for railroad purposes in the tunnel and its approaches which is exclusive as against any inconsistent user. We disagree.

Contrary to Rio Grande's argument, it was granted a lease, not an easement. The railroad lease provides in pertinent part:

"THE MOFFAT TUNNEL IMPROVEMENT DISTRICT HEREBY LEASES, LETS AND DEMISES to the Party of the Second Part, its successors [Rio Grande], assigns, sublessees and legal representatives, that certain Railroad Tunnel, together with approaches thereto ... [and] together with all other property, rights, easements, appurtenances connected with said Railroad Tunnel, its approaches and equipment, *and belonging to the District.*

. . . .

TO HAVE AND TO HOLD Said Railroad Tunnel, together with its approaches ... and all appurtenances and all other property, rights-of-way, and easements *belonging to the Party of the First Part [District]*, that may be useful, incident, or convenient for the use and operation of said Railroad Tunnel." (emphasis supplied)

■ It is clear from this language that the railroad was given a lease to use the property, easements, or rights of way owned by the District to further its railroad operations. This language is consistent with the Moffat Tunnel Act which prohibits any monopoly of use of the tunnel or its approaches. Section 32–8–108(2), C.R.S.; *see Moffat Tunnel Improvement District v. Denver & S.L. Ry., supra.*

Moreover, the Commission is empowered to make separate and additional and supplemental contracts for one or more uses, until, in the Commission's judgment, the capacity of the tunnel and its approaches for any purpose has been reached. Section 32–8–108(2), C.R.S. When capacity has

been reached, contracts for use shall be given preference in regard to their priority, and subsequent contracts are subject to existing and prior contracts. Section 32–8–108(2), C.R.S.

Thus, Winter Park and Rio Grande have co-extensive leasehold rights in the Evans Tract. Rio Grande's rights, however, by statute and by contract, are superior to those of Winter Park. *See* § 32–8–108(2), C.R.S. Hence, if it is ultimately determined that Winter Park is interfering with the safe operation of Rio Grande's railway, Rio Grande would be entitled to relief. But such relief could not be an exclusive easement, since it is precluded by the Act itself.

### III.

■ Rio Grande argues, in the alternative, that if it does not have an exclusive easement as against Winter Park's use of the Evans Tract adjacent to its tracks, then it has the right to condemn Winter Park's leasehold interest. This argument likewise does not persuade us.

Rio Grande contends that it was not seeking to condemn the fee interest of the District, and thus, was not attempting to create a monopolistic interest in itself in violation of the statutory mandate set forth in § 32–8–108(2). Regardless of Rio Grande's intent, we agree with the trial court that if Rio Grande is allowed to condemn Winter Park's leasehold interest, it would usurp the Commission's statutory authority to determine the purposes for which the property may be used. Section 32–8–108, C.R.S.

Moreover, any right that Rio Grande may have had pursuant to § 38–2–101, C.R.S., to condemn an easement or right-of-way for its railroad operations would be inoperative and noneffective, *see* § 32–8–121, C.R.S., as it would interfere with the independent judgment of the Commission regarding the use of the District's property.

■ Finally, Rio Grande already has preference in regard to its use of the property as provided by statute and by its contract with the District. *See* § 32–8–108(2), C.R.S. Hence, if a factual determination is made that Winter Park's use is inconsistent or interferes with that of the railroad, Rio Grande would be entitled to an order of abatement as against Winter Park to the extent of the inconsistency. ,

### IV.

Rio Grande's next contention is that the trial court erred in determining that it was without jurisdiction to grant Rio Grande injunctive or declaratory relief, concluding that the dispute as to whether Winter Park's use of the Evans Tract was inconsistent with that of Rio Grande was a factual question to be decided in the first instance by the Commission. We perceive no error.

The pertinent portion of § 32–8–108(2), C.R.S. provides:

*"The [Commission] has the power* to prescribe regulations for the use of such tunnel by the parties to contracts for such use, and *to hear and determine all controversies which may arise between such parties, under such rules as the [Commission] may from time to time promulgate; and all contracts shall expressly reserve such power to the [Commission]. . . .* The judgment and action of the [Commission] on all matters referred to in this section shall be final except as specifically limited in this article."* (emphasis supplied)

■ Upon a review of the railroad lease between the District and Rio Grande, as Denver & Salt Lake Railway Co.'s successor in interest, we were unable to locate any provision expressly reserving to the Commission the power to determine disputes between users. Nevertheless, the statute specifically requires an express reservation of this power. Under these circumstances, this provision of the statute becomes part of the contract. *See B.K. Sweeney Electrical Co. v. Poston,* 110

◼

Colo. 139, 132 P.2d 443 (1942); *Wimmer v. Jenkins,* 703 P.2d 1326 (Colo.App.1985). Hence, the trial court was correct in ruling that it had no jurisdiction to determine the rights of the parties on the issue of inconsistent use, because Rio Grande had failed to exhaust its administrative remedies.

## V.

Rio Grande finally argues that it has a right against the District and the Commission to be held harmless or indemnified for any liability incurred as a result of injuries occurring within 100 feet of its tracks. We do not address this issue as any right to indemnification would be dependent upon a finding by the Commission that Winter Park's use is inconsistent or interferes with and poses a safety hazard to the railroad operations of Rio Grande.

Judgment affirmed.

BABCOCK and METZGER, JJ., concur.