QUESTION PRESENTED AND CONCLUSION
Question: What are the powers and duties of the Central Information System Board and the Secretary of State concerning security interest filings in light of legislation enacted in 2001 that is ambiguous in some respects (S.B. 01-240, 2001 Colo. Sess.Laws, chap. 321, p. 1313)?
Answer: The Central Information System Board retains general supervisory powers over the central filing system. The Secretary of State is to impose fees and set standards for filing documents that perfect security interests under Articles 9 and 9.5 of Title 4 of the Colorado Revised Statutes.
 ANALYSIS
This opinion addresses the powers and duties of the Colorado Secretary of State and the Colorado Central Information System Board concerning the filing of security interests under Articles 9 and 9.5 of Title 4 of the Colorado Revised Statutes. Colorado has had a system to perfect such security interests for more than thirty years. The State's system has changed from time to time, with the last substantial change contained in legislation enacted by the Colorado General Assembly in 2001. This opinion is issued because the 2001 legislation is ambiguous in part and potentially conflicts with existing law in several respects.
Colorado's security interest filing system. A brief history of Colorado's involvement with security interests in personal property and fixtures provides background to the legal analysis in this opinion. For this reason, this opinion discusses several historical versions of Articles 9, 9.3 and 9.5 of Title 4 of the Colorado Revised Statutes. For the convenience of the reader, the texts of these historical statutes are attached to this opinion.
In order to regulate security interests in personal property and fixtures, Colorado adopted Article 9 of the Uniform Commercial Code in 1965. More than twenty years later, in 1988, and in order to regulate security interests in farm products, the General Assembly enacted Article 9.5 of Title 4 of the Colorado Revised Statutes, the "Central Filing of Effective Financing Statement Act." H.B. 88-1219, 1988 Colo. Sess. Laws, 2d Sess., chap. 40,p. 325. Colorado adopted Article 9.5 in order to comply with § 1324 of the federal Food Security Act of 1985.
Several years later, in 1995, the General Assembly created the "Central Indexing System Act" to establish a centralized index for filings under Titles 9 and 9.5 of Article 4 of the Colorado Revised Statutes. § 4-9.3-101, C.R.S. The 1995 law, H.B. 95-1219 also created the State Filing System Board (hereinafter the "Board") to oversee and supervise the central filing system for security interests relating to farm products.[1] Because § 35-15-102, H.B. 88-1219, 1988 Colo. Sess. Laws, 2d Sess. chap.40, p. 333. § 35-15-102, expired on July 1, 1996, the Board was recreated in § 4-9.3-103. S.B. 95-091, 1995 Colo. Sess. Laws, chap.225, p. 1135.
In 1999, the General Assembly expanded the power of the Board to encompass filings of most security interests under Article 9 of Title 4. The 1999 law generally removed the authority of the Colorado Secretary of State to regulate filings of security interests. S.B. 99-065, 1999 Colo. Sess. Laws, chap. 210, p. 731.
Two years later, in 2001, the General Assembly restored some of the authority of the Colorado Secretary of State over filings regarding security interests and agricultural liens. These changes are contained in S.B. 01-240. This opinion addresses the effect of these statutory changes on the respective powers and duties of the Secretary of State and the Board.
The place in which security interests are to be filed has changed several times in recent years. Prior to 1999, the proper place to file documents necessary to perfect a security interest was the Secretary of State's office or the office of the county clerk and recorder. § 4-9-401(1)(b)(I)(B), S.B. 99-065, 1999 Colo. Sess.Laws, chap. 210, p. 731. After January 1, 2000, the place to file to perfect a security interest was in the office of the central filing officer. § 4-9-401(1)(b)(I)(C), S.B. 00-065, 1999 Colo. Sess. Laws, chap. 210, p. 731. The General Assembly instructed the central filing officer to consolidate into one database the records kept pursuant to Articles 9 and 9.5 of Title 4. § 14-10-122, § 38-25-102(2) and 38-27-103, C.R.S. S.B. 99-065,1999 Colo. Sess. Laws, chap. 210, p. 738.
Prior to 1999, the Board oversaw the central filing system. The central filing system consisted primarily of the system for filing effective financing statements or notices of effective financing statements under the Food Security Act of 1985. See § 4-9.5-102, C.R.S. (1998).[2]
In 1999, the Board was restructured through statutory changes contained in S.B. 99-065. This measure consolidated filings under Articles 9 and 9.5. It effectively removed the Secretary of State from day-to-day operation of the central information system.
The 1999 measure reconstituted the Board as a type 1 agency. § 4-9.3-103 (b), (c), S.B. 99-065, chap. 210, p. 741. It created the position of central filing officer. §§ 4-9.3-102(2) and -103(2)(j), 99-065, chap. 210, pp. 740, 743. The Board appointed the central filing officer. All necessary personnel and equipment were transferred to the Board. The central filing officer's jurisdiction extended to filings for most security interests under articles 9 and 9.5. §§ 4-9-401.5 and 4-9.5-103(3), S.B. 99-065, chap. 210, 732, 747. The central filing officer was given the power to obtain records from each clerk and recorder, the Secretary of State and the Board for the purpose of completing a central database. § 4-9-414, S.B. 99-065, chap. 210, pp. 737-738.
The 2001 legislation contains some ambiguities and potential legalconflicts. Legislation enacted in 2001 once again substantially amended filing procedures in Colorado. S.B. 01-240. The ambiguities and potential legal conflicts resulting from this legislation create the reason for this opinion.
Article 9 of Title 4 was repealed and reenacted in 2001. S.B.01-240, 2001 Colo. Sess. Laws, chap. 321, p. 1313. The Secretary of State replaced the central filing officer as the person responsible for administering the repository for filings to perfect security interests under Articles 9 and 9.5. § 4-9-501(2),S.B. 01-240, chap. 321, pp. 1378-79. The term "central filing officer" was amended to mean the Secretary of State. § 4-9.5-103
(2.5), S.B. 2001 Colo. Sess. Laws, chap. 321, p. 1430. In addition, § 4-9-525(a) authorized the Secretary of State to impose and collect fees for filings under part 5 of Article 9. S.B. 01-240,2001 Colo. Sess. Laws, chap. 321, pp. 1393-94. It further authorized the Secretary of State to adopt and publish rules for filing documents. § 4-9-526(a), S.B. 01-240, chap. 321, p. 1394-95. The Secretary of State may adopt technical standards to facilitate the filing of documents electronically or by facsimile transmission. § 4-9-529(d), S.B. 01-240, 2001 Colo. Sess. Laws,chap. 321, p. 1396. The employees formerly supervised by the filing officer were transferred to the Secretary of State, along with property of the central filing officer. The Secretary of State succeeded the central filing officer on all contracts. The filings under Articles 9 and 9.5 continue to be stored in the central database. §§ 4-9-501(c) and 4-9.5-103(3), S.B. 01-240, 2001 Colo.Sess. Laws, chap. 321, pp. 1379, 1430.
At the same time, the 2001 legislation, S.B. 01-240, does not amend or limit the Board's authority over certain segments of the central information system. The Board may still (1) adopt rules for the exercise of its powers; (2) enter into contracts pertaining to the Board's functions; (3) oversee the design, operation and implementation of the central information system; (4) explore expansion of the amount and kind of public information available on the system and study the expansion of user associations; (5) monitor program performance and accountability; (6) retain control over the development and distribution of the master list; (7) bring suit in connection with the exercise of its powers; (8) accept grants and moneys from the state or any other source; (9) cooperate and contract with local, state or national organizations or governmental entities engaged in similar activities; and, (9) disburse funds in the central information system cash funds. In addition, the Board retains the power through June 30, 2002 to promulgate rules for the exercise of the central filing officer's powers and duties. § 4-9.3-103(3)(b), S.B.01-240, 2001 Colo. Sess. Laws, chap. 321, p. 1428, 1448.
S.B. 01-240 contains significant ambiguities. It makes the Secretary of State's office the repository for recordings involving both security interests under Article 9 and effective financing statements under Article 9.5. § 4-9-501(a) and (c). The central filing system established under § 4-9-501 also includes the information filed under Article 9.5. § 4-9.5-103(3). Pursuant to §4-9-525(a), the Secretary of State must collect fees for services rendered under part 5 of Article 9. The effective financing statements must be accompanied by a fee "established pursuant to section 4-9-525." § 4-9-103(7)(j). The Secretary of State also has the authority to adopt procedures for the operation of the system, §§ 4-9-526 and 529.
Moreover, S.B. 01-240 also creates potential legal conflicts. It did not amend the portions of Article 9.5 that authorize the Board to establish fees for accessing information in the central information system, § 4-9.3-103(3)(g), or for the filing of notices of agricultural liens, § 4-9.3-103(3)(k). In addition, S.B. 01-240 gives the Board continuing power to pass rules governing the activities of the Secretary of State in her capacity as central filing officer through June 30, 2003. As a result, the powers and duties of the Board and the Secretary of State concerning filings and fees for filings under Articles 9 and 9.5 overlap.
Legal standards for the interpretation of conflicting or ambiguousstatutes. The primary task when interpreting statutes is to give effect to the intent of the General Assembly. Benz v. People,5 P.3d 311, 315 (Colo. 2000). If the meaning of a statute is unambiguous, interpretative rules of statutory construction are inapplicable. Town of Telluride v. Lot Thirty-Four Venture,L.L.C., 3 P.3d 30, 35 (Colo. 2000). If a statute is ambiguous, consideration is to be given to (1) the object sought to be attained, (2) the circumstances under which the statute was enacted, (3) the legislative history, and (4) the consequences of a particular construction. § 2-4-203(1)(a), (b), (c) and (e), C.R.S. (2000).
The General Assembly intends a just and reasonable result when it enacts a statute. A statutory construction that leads to an absurd result will be rejected. McClellan v. Meyer, 900 P.2d 24, 30
(Colo. 1995). When the General Assembly enacts a comprehensive statutory scheme, the legislation should be construed as a whole to give effect to all its parts within the context of the entire statutory scheme. Askew v. Industrial Claim Appeals Office,927 P.2d 1333, 1337 (Colo. 1995). If a conflict between statutes cannot be reconciled, then the specific statute controls the general statute, People v. Smith, 971 P.2d 1056, 1058 (Colo. 1999), and the later statute controls, Burton v. City and Countyof Denver, 99 Colo. 207, 211, 61 P.2d 856, 858 (1936).
Dual regulation is disfavored when the government has evinced an intent to implement a unified, uniform system. County of Alcona v.Wolverine Environmental Production, Inc., 590 N.W.2d 586, 593
(Mich.App. 1998). Dual regulation likely will cause inconsistent standards and enforcement, thereby confusing the persons who are the subjects of the regulation. Bravo Vending, Inc. v. City ofRancho Mirage, 16 Cal.App.4th 383, 399, 20 Cal.Rptr.2d 164, 172
(1993). Courts recognize that due process concerns can arise from such inconsistencies. Gilbert v. Mathews, 352 P.2d 58, 69 (Kan. 1960); Blauvelt v. Beck, 76 N.W.2d 738, 747 (Neb. 1956).
Legal analysis. The 2001 legislation, S.B. 01-240, can be read in three ways. First, both the Secretary of State and the Board could have concurrent authority over filings in the central information system. Second, the Board could have ultimate authority over the central information system up to July 1, 2003. Third, the Secretary of State could have authority over central information system for purposes of filings made pursuant to Articles 9 and 9.5. For the reasons described below, I conclude that the Secretary of State has authority to regulate and supervise the central information system for purposes of filings under Articles 9 and 9.5.
The General Assembly intended to establish a unified filing system to perfect security interests. S.B. 01-240, § 4-9.5-103(3) ("It is the intent of the general assembly that, effective January 1, 2000, the filing system established by § 4-9-501 shall constitute the central filing system.") The creation and implementation of a unified system cannot be readily achieved if the same system is governed by two separate entities. Given the confusion that would likely result from rules passed by two bodies affecting the same subject matter, it is unlikely that the General Assembly intended to have both the Board and the Secretary of State promulgate rules governing filings of security interests and fees.
The 2001 legislation gives the Secretary of State more autonomy to operate the central information system. Prior to the enactment of the legislation in 2001, the central filing officer operated the system under the auspices of the Board, § 4-9.3-103, and charged fees in accord with the schedule set forth in § 4-11-102. § 4-9-406.5(2)(d), C.R.S. (2000). Now the Secretary of State operates the system, pursuant to rules that she sets, and the Secretary of State establishes the fees for use of the system. As of July 1, 2003, the Board will not have any authority to implement the operation and improvement of the system, to promulgate rules governing the Secretary of State's actions or to monitor her performance. S.B. 01-240, § 4-9.3-103(3).
As described above, to the extent that the various provisions of existing law cannot be harmonized, the specific provisions must prevail over the more general provisions. Also, later statutes prevail over the earlier statutes. These rules of statutory interpretation, too, suggest the Secretary of State holds broad powers under the 2001 legislation.
The statutory provisions granting the Board the power to operate the central information system are general. They speak about creating and implementing the system, overseeing the design, operation and implementation of the system and monitoring program performance. § 4-9.3-103(3)(a), (d), (e). In contrast, the statutory provisions addressing the Secretary of State's power to operate the central information system are much more specific than those authorizing the Board to operate the system. The statute makes clear that the Secretary of State's office is the general repository for filings under Articles 9 and 9.5. § 4-9-501. The Secretary of State must adopt and publish rules to implement part 5 of Article 9, including filings made pursuant to Article 9.5. §§ 4-9-501(c); 4-9-526. The Secretary of State also has a duty to file annual reports with the governor and the legislature concerning the operation of the filing office. § 4-9-527. In addition, the Secretary of State must ensure that documents may be filed by facsimile transmission or electronically. § 4-9-529. Because the Secretary of State's authority over the system is more detailed, I conclude that it prevails over the more generally described duties of the Board.
Finally, the statutory provisions empowering the Secretary of State to establish fees for filings were passed after the provisions empowering the Board to establish fees. The General Assembly gave the Board the power to establish fees for accessing information in 1995. § 4-9.3-103(3)(g)(j) and (k), S.B. 95-091,chap. 225, p. 1137. The Secretary of State was given authority in 2001. § 4-9-525, S.B. 01-240. For this reason, I also conclude that the fee authority language of S.B. 01-240 prevails over earlier enacted provisions.
 CONCLUSION
The central information system is designed to consolidate filings under Articles 9 and 9.5 of Title 4. Pursuant to recent legislation, S.B. 01-240, the Secretary of State has the power to regulate the filing of documents perfecting security interests under Articles 9 and 9.5. The Central Information System cannot operate the central information system or set fees for accessing information on the system. The Board retains other powers including, but not limited to, monitoring program performance, exploring ways to expand the amount and kind of information available on the system, establishing fees for accessing information other than that provided under Articles 9 and 9.5, establishing and distributing the master lists, and disbursing funds in the central information cash fund.
Issued this 24th day of August, 2001.
KEN SALAZAR Attorney General
MAURICE KNAIZER Assistant Deputy Attorney General
 FOOTNOTES
[1] The original name of the Board was the Central Indexing System Board.
[2] More specifically, prior to 1999 the Board had the power to: (a) create, implement and monitor the central indexing system, § 4-9.3-103(a) and (e), C.R.S. (1998); (b) promulgate rules for the exercise of its powers and duties, § 4-9.3-103(3)(b), C.R.S. (1998); (c) enter into contracts, § 4-9.3-103(3)(c), C.R.S. (1998); (d) investigate means to expand the amount and kind of information provided to the public through the central indexing system, § 4-9.3-103(3)(d), C.R.S. (1998); (e) determine which filings to perfect security interests and notices of agricultural liens and other liens created by law are to be placed on the system; (f) establish fees to be charged for the system, § 4-9.3-103(3)(g), C.R.S. (1998); (g) establish fees for the filing of effective financing statements; (h) Establish fees for the filing of notices of agricultural liens created by law, § 4-9.3-103(3)(k), C.R.S. (1998); (i) compile a master list of effective financing statements and notices of effective financing statements, § 4-9.5-104(1), and (2), C.R.S. (1998); (j) publish the information in the master lists, § 4-9.5-104(3)(a), C.R.S. (1998); (k) establish fees for the distribution of master lists, § 4-9.3-103(3)(l), C.R.S. (1998); and, (l) establish a registration system for receipt of the master lists, § 4-9.5-104(4), C.R.S. (1998).
Appendix 1 — Uniform Commercial Code, Central Filing of EffectiveFinancing Statements, H.B. 88-1219, 1988 Colo. Sess. Laws, 2dSess., chap. 40, p. 325
Appendix 2 — Consumer and Commercial Transactions, CentralIndexing System, S.B. 95-091, 1995 Colo. Sess. Laws, Chap. 225
Appendix 3 — Consumer and Commercial Transactions, Removal ofAuthority of the Colorado Secretary of State to Regulate Filingsof Security Interest, S.B. 99-065, 1999 Colo. Sess. Laws, chap.210, p. 731
Appendix 4 — Consumer and Commercial Transactions Excerpts, S.B.01-240, 2001 Colo. Sess. laws, chap. 321