Robert L. ASKEW, Petitioner,

v.

SEARS ROEBUCK & COMPANY, Allstate Insurance Company, and The Industrial Claim Appeals Office of the State of Colorado, Respondents.

No. 94CA1932.

Colorado Court of Appeals,
Div. I.

June 15, 1995.

Rehearing Denied July 13, 1995.

Certiorari Granted April 8, 1996.

Norton Frickey & Associates, P.C., Janet L. Frickey, Lakewood, for petitioner.

Ritsema & Lyon, P.C., Eliot J. Wiener, Andrew R. Bantham, Denver, for respondents Sears Roebuck & Co. and Allstate Ins. Co.

No appearance for respondent Industrial Claim Appeals Office.

Opinion by Judge PLANK.

In this proceeding for workers' compensation benefits, Robert L. Askew (claimant) petitions for review of a final order of the Industrial Claim Appeals Panel awarding him medical impairment benefits based upon a 6% whole person impairment, rather than a 14% impairment. We affirm.

Claimant sustained an industrial injury to his back in July 1991, for which respondents Sears Roebuck & Co. and Allstate Insurance Co. admitted liability. The Administrative Law Judge (ALJ) found that an x-ray taken three days after the injury showed osteoarthritic degenerative changes. He concluded that the degeneration must have existed at the time of the injury, since it could not have developed so quickly following the injury.

A physician was appointed by the Division of Workers' Compensation (Division) to perform an independent medical examination (IME) of the claimant under the provisions now codified at § 8–42–107(8)(c), C.R.S. (1994 Cum.Supp.). Based upon the *American Medical Association Guides to the Evaluation of Permanent Impairment* (Rev. 3d ed. 1991) (*AMA Guides*), the IME physician rated claimant's impairment as 7%, with 6% for loss of range of motion, for a total of 13% whole person impairment. However, the IME physician found that only the six percent of this impairment was caused by the industrial injury, with the remainder apportioned to the pre-existing condition.

Another physician who rated claimant's impairment at 14% concluded that no apportionment was necessary. This conclusion was based on the determination that even though the degenerative changes may have pre-existed the industrial injury, claimant was asymptomatic until the injury. The IME physician subsequently agreed that claimant's impairment was 14%, but reiterated his decision to apportion the 6% of the impairment to the industrial injury.

The ALJ found that the IME physician properly applied the *AMA Guides* in apportioning. Therefore, the ALJ concluded that because claimant failed to overcome the IME physician's impairment rating by clear and convincing evidence, as provided in § 8–42–107(8)(c), the 6% impairment rating was binding. The Panel affirmed.

■ Claimant contends that apportionment is not a medical determination for the IME physician, but rather a legal determination for the ALJ. Therefore, claimant argues that the IME physician's apportionment is not binding, and is not subject to the clear and convincing standard of proof under § 8–42–107(8)(c) for a binding IME. Instead, claimant urges us to adopt a standard requiring the ALJ to determine apportionment based on the preponderance of the evidence. We are not persuaded.

Just as the authorized treating physician must base the impairment rating on the *AMA Guides* under § 8–42–107(8)(c), an IME physician is likewise bound by this same standard. *See* §§ 8–42–101(3)(a)(I) and 8–42–101(3.7), C.R.S. (1994 Cum.Supp.); *Boulder v. Dinsmore*, 902 P.2d 925 (Colo. App.1995). And, because portions of the *AMA Guides* form part of the record in this case, we may consider those portions on review. *See Boulder v. Dinsmore, supra.*

The *AMA Guides*, at 6–7, envision a physician's apportionment by providing that:

> If 'apportionment' is needed, the analysis must consider the nature of the impairment and its possible relationship to each alleged factor, and it must provide an explanation of the medical basis for all conclusions and opinions. To establish that a factor *could* have contributed to the impairment, the analysis must include a discussion of the pathophysiology of the particular condition and of pertinent host characteristics. A conclusion that a factor *did* contribute to an impairment must rely on documentation of the circumstances under which the factor was present and verification that the type and magnitude of the factor were sufficient and bore the necessary temporal relationship to the condition. The existence of an impairment does not create a presumption of contribution by a factor with which the impairment is often associated. (emphasis added)

However, the glossary to the *AMA Guides* provides that apportionment "is a *nonmedical* determination" when a factor contributing to impairment does in fact cause the impairment, rather than being a possible cause. (emphasis added) It is this provision in the glossary upon which claimant's argument rests. The body of the *AMA Guides* arguably conflicts with the glossary definition of "apportionment." However, we need not reconcile this ambiguity because we conclude that, by enacting § 8–42–107(8)(c), the General Assembly has clearly delegated the decision to apportion to the IME physician by declaring the opinion of the IME physician binding (when the parties choose an IME physician by mutual agreement) or binding to the extent that it can be overcome only by clear and convincing evidence (when the parties cannot agree on an IME physician, and the Division selects the physician). *See Metro Moving & Storage Co. v. Gussert*, 914 P.2d 411 (Colo.App.1995).

Furthermore, asserting that he has a "medical impairment," claimant objects to the Panel's use of the term "industrial disability." Claimant asserts that § 8–42–104(2), C.R.S. (1994 Cum.Supp.) is the only provision authorizing *apportionment*, and since it authorizes apportionment only for a previous *disability*, it thereby implicitly precludes an IME physician from apportioning medical *impairment*. However, even though § 8–42–104(2) references "disability," the term is used in the context of a "previous disability," and concerns the effects of an injury as they were termed prior to amendments to the Workers' Compensation Act. Under the amended version of the Act, "medical impairment" simply describes "permanent disability." *See Thornton v. Replogle*, 888 P.2d 782 (Colo.1995). Hence, the ALJ's authority to apportion permanent partial disability under § 8–42–104(2) does not preclude the IME physician from apportioning medical impairment.

We therefore conclude that when, as here, an IME physician apportions a medical impairment rating between a pre-existing condition and the effects of an industrial injury, both the impairment rating and any apportionment are subject to the deference accorded by § 8–42–107(8)(c). Thus, when a Division-selected IME physician apportions an impairment rating, the applicable standard of proof for overcoming that rating is clear and convincing evidence.

■ Claimant next contends that the ALJ's order is not supported by substantial evidence because regardless of whether an apportionment is made by the IME physician or the ALJ, apportionment is improper in this case. Claimant argues that since his pre-existing condition was asymptomatic and non-ratable, there was nothing to apportion. We disagree.

■ The clear and convincing standard set forth in § 8–42–107(8)(c) is satisfied by a showing that the truth of a contention is highly probable. *See Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979). Whether a claimant has sustained his burden of proof is a question of fact for the ALJ. *Eisnach v. Industrial Commission*, 633 P.2d 502 (Colo. App.1981).

■ The ALJ is the sole arbiter of conflicting medical evidence, *Rockwell International v. Turnbull*, 802 P.2d 1182 (Colo.App. 1990), and his or her findings are binding on review if supported by substantial evidence and plausible inferences drawn from the record. *Prestige Homes, Inc. v. Legouffe*, 658 P.2d 850 (Colo.1983).

The ALJ's decision to award permanent partial disability benefits based on a 6% impairment rating is supported by the evidence here. The IME physician's opinion is consistent with the medical evidence that claimant's symptoms were intermittent and that x-rays taken three days after the industrial injury showed degenerative changes. Furthermore, the apportionment was properly based upon the *AMA Guides*.

Therefore, the ALJ could conclude that, although the degenerative changes formed part of the basis for the impairment, because those changes were pre-existing, they do not constitute part of the impairment stemming from the industrial injury.

Admittedly, the opinion of the second physician who chose not to apportion, if credited,

could support a contrary result concerning the characterization of claimant's industrial impairment and the effect of his pre-existing condition. However, the ALJ did not find this opinion persuasive, and we may not substitute our judgment for that of the ALJ in assessing the weight and sufficiency of the medical evidence. *See Cary v. Chevron U.S.A., Inc.*, 867 P.2d 117 (Colo.App.1993).

The order of the Panel is affirmed.

METZGER and TAUBMAN, JJ., concur.