Robert L. ASKEW, Petitioner,

v.

The INDUSTRIAL CLAIM APPEALS OFFICE OF THE STATE OF COLORADO, Sears Roebuck & Company, and Allstate Insurance Company, Respondents.

No. 95SC489.

Supreme Court of Colorado, En Banc.

Dec. 3, 1996.

The Frickey Law Firm, Janet L. Frickey, Lakewood, Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, for Petitioner.

Ritsema & Lyon, P.C., Eliot J. Wiener, Denver, for Respondents Sears Roebuck & Company and Allstate Insurance Company.

Michael J. Steiner, Denver, for Amicus Curiae Colorado Compensation Insurance Authority.

Gordon & Macdonald, P.C., William J. Macdonald, Denver, for Amicus Curiae Workers' Compensation Education Association.

Justice SCOTT delivered the Opinion of the Court.

We granted certiorari to decide whether the court of appeals erred when, in *Askew v. Sears Roebuck & Co.*, 914 P.2d 416 (Colo. App.1995), it affirmed the order of the Industrial Claim Appeals Panel (Panel) to apportion claimant's medical impairment rating between an asymptomatic, preexisting condition and claimant's work related injury. Our order granting certiorari set forth the following issue:

> Under the Workers' Compensation Act of Colorado, §§ 8–40–101 to 8–47–209, 3B C.R.S. (1995 Supp.), and particularly § 8–42–104, may the medical impairment rating for a claimant seeking workers' compensation benefits for a permanent partial disability be apportioned between the effects of an industrial injury and a pre-existing degenerative physical condition?

Because we conclude that the relevant provisions of the Workers' Compensation Act of Colorado, §§ 8–40–101 to 8–47–111, 3B C.R.S. (1996 Supp.), and our cases interpreting that law, contemplate apportionment for a prior compensable "disability" but not for a latent preexisting condition, we reverse the judgment of the court of appeals and remand for further proceedings consistent with this opinion.

## I.

While the parties dispute whether apportionment is proper, they are in agreement as to the salient facts. Petitioner, Robert L. Askew, injured his back in an admitted industrial injury in the course of his employment with respondent, Sears Roebuck & Company (Sears). Askew, a graduate student at the Colorado School of Mines, worked part-time for Sears as a bookkeeper. On July 5, 1991, at the request of a Sears assistant manager, Askew attempted to place a 50–pound box of invoices on a shelf above his head. As he reached up to put the box on the shelf, Askew's lower back "popped,"

temporarily paralyzing his legs, and causing permanent injuries and persistent physical limitations. At the time, Askew was 49 years old.

A spinal x-ray taken several days after the injury revealed that Askew had osteoarthritic degenerative changes with intervertebral space narrowing in his spine. Although he returned to work five days after the accident, his lower back stiffness continued and he suffered occasional sharp pain and disc movement when he twisted his back or assumed certain positions. Subsequent tests confirmed disc herniation and nerve impairment.

Askew originally consulted his primary treating physician, J. Michael Geier, M.D. However, Dr. Geier did not evaluate Askew's impairment under the *American Medical Association Guides to the Evaluation of Permanent Impairment* (*AMA Guides* ) as required by section 8–42–107(8)(c), 3B C.R.S. (1996 Supp.), of the Workers' Compensation Act, to calculate permanent partial disability benefits.[1]

As a result, respondent, Allstate Insurance Co. (Allstate), referred Askew to Gene E. Bolles, M.D., who evaluated Askew's impairment under the *AMA Guides*. Dr. Bolles determined that Askew had suffered an 8% whole person impairment, that he had somewhat chronic but asymptomatic problems with his back, and that apportioning the impairment rating between the pre-existing

condition and the industrial injury was not reasonable or appropriate.[2]

Askew was dissatisfied with that impairment rating and applied for an independent medical examination (IME) pursuant to section 8–42–107(8)(c).[3] The director of the Division of Workers' Compensation (Director) selected John J. Aschberger, M.D., to perform the IME. Dr. Aschberger determined that Askew had a 13% whole person impairment under the *AMA Guides*. However, because Dr. Aschberger "wasn't comfortable with assigning a 7 percent impairment attributable to the work injury" and he was uncertain as to whether the source of Askew's injury was attributable to the preexisting degenerative changes or the industrial injury, he decreased the whole person injury by 50%. Therefore, Dr. Aschberger decided that 7% of the impairment should be apportioned due to Askew's preexisting osteoarthritic degeneration. Thus, by his report dated September 23, 1993, Dr. Aschberger eventually concluded that Askew had only a 6% permanent partial disability due to the industrial or work-related injury.[4]

Still dissatisfied, Askew hired Donald S. Harder, M.D., to conduct another examination. On November 8, 1993, Dr. Harder rated Askew's impairment at 14% of the whole person under the *AMA Guides*. Dr. Harder determined that apportionment was not appropriate. By letter dated December 15, 1993, prepared after reviewing his own November report and Dr. Aschberger's re-

1. Section 8–42–107(8)(c), 3B C.R.S. (1996 Supp.), provides in relevant part:

 When ... there is a determination that permanent medical impairment has resulted from the injury, the authorized treating physician shall determine a medical impairment rating as a percentage of the whole person based on the revised third edition of the "American Medical Association Guides to the Evaluation of Permanent Impairment."

2. The *AMA Guides* define apportionment as "the determination of the degree to which each of various occupational or nonoccupational factors has contributed to a particular impairment."

3. Section 8–42–107(8)(c) provides in part that:

 If either party disputes the authorized treating physician's finding of medical impairment ... the parties may select an independent medical examiner by mutual agreement. The finding

of such independent medical examiner shall be binding on the parties and on the division. If the parties are unable to mutually agree on the selection of an independent medical examiner, the division shall select an independent medical examiner.... The finding of such independent medical examiner regarding the medical impairment rating shall be overcome only by clear and convincing evidence.

4. Dr. Aschberger decreased the original 13% whole person impairment rating by half, to 6.5%, because: (1) Askew's symptoms were intermittent and short-lived; (2) the multiple abnormalities shown by the x-ray and the CT scan were obviously not all caused by the injury on July 5, 1991, and reasonably can be the source of some of the limitations in the range of motion; and (3) Askew was not performing home exercises. Despite the directions in the *AMA Guides* to round up, Dr. Aschberger then rounded the impairment rating down to 6%.

port, Dr. Harder opined that apportionment was inappropriate because the "degenerative changes ... very well may have pre-existed his injury" and "[h]ad this injury not occurred, there is no reason to think that [Askew] would have developed back pain problems."

After a hearing, the administrative law judge (ALJ) concluded that Dr. Aschberger and Dr. Harder had agreed that Askew sustained a 14% whole person impairment,[5] but had disagreed whether apportionment was appropriate. The ALJ upheld Dr. Aschberger's final 6% impairment rating, ruling that the independent medical examiner appointed by the Director had complied with the *AMA Guides* in determining that "some of [the 14% whole person impairment] should be apportioned to the claimant's pre-existing condition."[6] Thus, the ALJ ruled that because Askew failed to overcome Dr. Aschberger's rating by clear and convincing evidence, *see* section 8–42–107(8)(c), Askew had sustained a permanent medical impairment of 6% and, therefore, Allstate was liable for benefits based on apportionment excluding pre-existing, asymptomatic conditions in the amount of $3,236.03.

The Panel from the Industrial Claim Appeals Office affirmed the order of the ALJ regarding apportionment. The Panel first noted that the ALJ's findings were supported by substantial evidence. The Panel then determined that the *AMA Guides* provide for apportionment of medical impairment. Thus, the Panel concluded that Dr. Aschberger properly apportioned Askew's impairment in accordance with the *AMA Guides* and that because Askew's preexisting condition contributed to his total impairment, the ALJ was correct in concluding that "the claimant is limited to permanent partial disability benefits based upon impairment of 6 percent of the whole person."

The court of appeals affirmed the Panel's order, holding that an IME physician may apportion a medical impairment rating between an asymptomatic, preexisting condition and the effects of an industrial injury, and that the impairment rating and the apportionment are subject to the deference accorded by section 8–42–107(8)(c). *Askew*, 914 P.2d at 418. Askew then petitioned for certiorari review.

## II.

Askew argues that under the Workers' Compensation Act, the medical impairment rating for a claimant with a permanent partial disability may not be apportioned between the effects of an industrial injury and the unknown impact of an asymptomatic, pre-existing physical condition. Respondents contend that based on the 1991 amendments to the Workers' Compensation Act, apportionment was appropriate.[7] We reject respondents' argument and hold that, under the plain language of section 8–42–104(2), 3B C.R.S. (1996 Supp.), and the *AMA Guides*, Askew was entitled to an impairment rating without apportionment.

---

5. While his report concluded a 13% whole person impairment existed, in his deposition, which was part of the record before the ALJ and here, Dr. Aschberger stated, "I can see in my report and [Dr. Harder's] report that ... [Askew's] impairment, whether it's related to the work injury or not, would be 14 percent."

6. The ALJ cited the *AMA Guides* § 2.2, at 6–7, which provides in relevant part:

 If "apportionment" is needed, the analysis must consider the nature of the impairment and its possible relationship to each alleged factor, and it must provide an explanation of the medical basis for all conclusions and opinions. To establish that a factor *could* have contributed to the impairment, the analysis must include a discussion of the pathophysiology of the particular condition and of pertinent

host characteristics. A conclusion that a factor *did* contribute to an impairment must rely on documentation of the circumstances under which the factor was present and verification that the type and magnitude of the factor were sufficient and bore the necessary temporal relationship to the condition. The existence of an impairment does not create a presumption of contribution by a factor with which the impairment is often associated.

7. Respondents' argument is based on the 1991 amendments to the Workers' Compensation Act and their alleged effect on permanent partial disability benefits. *See* Colo.Sess.Laws 1991, ch. 219, §§ 8–1–102 to 8–47–109, at 1291–1336. However, we do not find those amendments to be dispositive or even relevant to our determination of apportionment pursuant to section 8–42–104(2).

## A.

Sections 8–42–102 through 8–42–104, 3B C.R.S. (1996 Supp.), of the Workers' Compensation Act govern the calculation of compensation for persons who have suffered work-related injuries. Our focus today rests on the proper interpretation of the apportionment provision, section 8–42–104(2), which provides:

In case there is a *previous disability*, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury. In such cases awards shall be based on said computed percentage.

(Emphasis added.) [8]

 In construing statutes, courts must give effect to the intent of the General Assembly. *PDM Molding, Inc. v. Stanberg,* 898 P.2d 542, 545 (Colo.1995). To that end, courts must look first to the statutory language, giving words and phrases their commonly accepted and understood meaning. *Id.* If the statutory language is unambiguous, there is no need to resort to interpretive rules of statutory construction because it is presumed that the General Assembly meant what it clearly said. *Griffin v. S.W. Devanney & Co.,* 775 P.2d 555, 559 (Colo.1989). When the General Assembly adopts a comprehensive regulatory scheme, the legislation should be construed as a whole to give effect to all its parts within the context of the entire scheme. *Martinez v. Continental Enters.,* 730 P.2d 308, 315 (Colo.1986).

The Workers' Compensation Act does not define the term "previous disability" as it is used in the apportionment provision of section 8–42–104. However, in arriving at a medical impairment rating as a percentage of the whole person, which necessarily includes any decision to apportion such impairment, section 8–42–107(8)(c) mandates that the authorized treating physician base his or her decision on the provisions of the *AMA*

Guides. See *supra* note 1; *see also Mountain City Meat Co. v. Oqueda,* 919 P.2d 246 (Colo.1996) (using *AMA Guides* to construe applicable provisions of the Workers' Compensation Act).

As pertinent here, the *AMA Guides* recognize that there is "uncertainty, if not controversy" about the meaning of certain terms found in various states' workers' compensation schemes. Thus, the *AMA Guides* set forth a detailed analysis of the meaning and application of terms such as "impairment," "disability," and "handicap." *See AMA Guides* § 1.1, at 1–2.

As defined by the *AMA Guides,* "impairment" means "an alteration of an individual's health status that is assessed by medical means." *Id.* at 1. "Disability," which is assessed by nonmedical means, is "an alteration of an individual's capacity to meet personal, social, or occupational demands." *Id.* However, the *AMA Guides* make clear that an individual who is impaired is not necessarily disabled. "Impairment gives rise to disability only when the medical condition limits the individual's capacity to meet the demands of life's activities." *Id.* at 2.

 Here, Askew's degenerative back condition or impairment, prior to the injury sustained at work, was asymptomatic and did not hinder his capacity to meet any demands. The record reveals that Askew had lived and worked without any back pain prior to the injury. Hence, under the definitions provided by the *AMA Guides,* Askew's preexisting back condition, although possibly an "impairment," could not be considered a previous "disability" because his capacity to meet the demands of life's activities was not limited. Therefore, the preexisting condition was not apportionable under the terms of section 8–42–104(2).

## B.

Furthermore, the *AMA Guides* establish under what circumstances apportionment for

8. Section 8–42–104(2) is virtually identical to section 8–47–102, 3B C.R.S. (1986), as it existed prior to the 1990 repeal and reenactment of the Workers' Compensation Act of Colorado. *See* Colo.Sess.Laws 1990, ch. 62, §§ 8–40–101 to 8–47–209, at 468–556 (codified at sections 8–40–101 to 8–47–209, 3B C.R.S. (1996 Supp.)).

medical impairment is appropriate by stating that:

> Valid assessment of a change in impairment rating will depend on the reliability of the previous rating. If there was no valid previous evaluation, information about the condition still could be used to estimate a rating according to *Guides* criteria. However, if there is insufficient information to measure the change accurately, the evaluator should not attempt to do so and should provide an explanation of that decision.
>
> If "apportionment" is needed, the analysis must consider the nature of the impairment and its possible relationship to each alleged factor, and it must provide an explanation of the medical basis for all conclusions and opinions.... A conclusion that a factor *did* contribute to an impairment must rely on documentation of the circumstances under which the factor was present and verification that the type and magnitude of the factor were sufficient and bore the necessary temporal relationship to the condition. The existence of an impairment does not create a presumption of contribution by a factor with which the impairment is often associated.

*AMA Guides* § 2.2, at 6–7.

■ Thus, according to the *AMA Guides,* apportionment is only appropriate when a prior impairment, whether occupational or nonoccupational,[9] has been sufficiently identified, treated, or evaluated to be rated as a contributing factor in the subsequent disability. *Accord, e.g., Holmstrom v. Public Serv. Co.,* 169 Colo. 439, 443, 458 P.2d 77, 79 (1969); *Powers v. Van Genderen Co.,* 153 Colo. 561, 566, 387 P.2d 285, 288 (1963); *Empire Oldsmobile, Inc. v. McLain,* 151 Colo. 510, 516, 379 P.2d 402, 405 (1963); *Industrial Comm'n v. Navajo Freight Lines, Inc.,* 149 Colo. 86, 89, 367 P.2d 894, 895 (1962); *Mathews v. Industrial Comm'n,* 144 Colo. 146, 149, 355 P.2d 300, 302 (1960);

*Seifried v. Industrial Comm'n,* 736 P.2d 1262, 1263 (Colo.App.1986); *Jones v. Adolph Coors Co.,* 689 P.2d 681, 683 (Colo.App. 1984).[10]

It therefore follows from the provisions of the *AMA Guides* and the relevant case law that a preexisting condition which was dormant or asymptomatic prior to an industrial injury cannot be evaluated adequately for purposes of apportionment. *See Parrish v. Industrial Comm'n,* 151 Colo. 538, 542, 379 P.2d 384, 386 (1963) ("It follows that in the instant case it was not error for the commission to refuse to allocate any portion of claimants's 5% disability to any alleged prior back condition or injury since there is no evidence of what that percentage should be and it could only be done on an arbitrary basis.").

The leading treatise in Workers' Compensation law supports our analysis here:

> Apart from special statute, apportionable "disability" does not include a prior *nondisabling* defect or disease that contributes to the end result. Nothing is better established in compensation law than the rule that, when industrial injury precipitates disability from a *latent* prior condition, such as heart disease, cancer, back weakness and the like, the entire disability is compensable, and except in states having special statutes on aggravation of disease, no attempt is made to weigh the relative contribution of the accident and the preexisting condition to the final disability or death. Apportionment does not apply in such cases, nor in any case in which the prior condition was not a *disability in the compensation sense.*

2 A. Larson, *The Law of Workmen's Compensation* § 59.22(a), at 10–492.361 to 10–492.368 (1996) (citations omitted) (emphasis added).

9. The definition of "apportionment" does not distinguish between occupational and nonoccupational injuries. *See supra* note 2.

10. We recognize that *Colorado Fuel & Iron Corp. v. Industrial Comm'n,* 151 Colo. 18, 25, 379 P.2d 153, 157 (1962), seems to establish a per se rule against apportionment between any injuries sus-

tained. However, the court in that case based its conclusion on section 8–42–104 as it existed in 1953. At that time, subsection (2), the apportionment provision of the statute that is relevant here, did not exist. Thus, that case does not dictate a different result.

Here, Askew's degenerative back condition was not known to him prior to a physical examination for his industrial injury. Dr. Aschberger nevertheless determined that 7% of Askew's 14% whole person impairment was due to a preexisting, yet dormant, back condition. However, there was no medical basis for Dr. Aschberger to establish the level of impairment prior to the industrial accident. Indeed, the record reveals that Askew had no pain in his back, was not treated for any back condition, and worked without hindrance prior to the injury at Sears. As Dr. Harder stated in his December 1993 letter:

> With regard to these degenerative changes, it is my opinion that these changes very well may have pre-existed his injury. We have here a man who is 50 years old who has lived with these changes for many years and had no symptoms what so ever [sic] until his injury occurred. It is clear to me that the injury is the cause for his problems. Had this injury not occurred, there is no reason to think that the patient would have developed back pain problems. Furthermore, we have no reason to think that if he did not have these degenerative changes, that the same accident would not have caused him ongoing back pain.

Thus, based on our review of the record, apportionment cannot be justified other than on an arbitrary basis and was therefore inappropriate under these circumstances.

### III.

We conclude that the orders of the Panel and of the ALJ allowing apportionment, and the court of appeals' opinion affirming those orders, were incorrect as a matter of law and that Askew was entitled to full compensation based on an impairment rating not diminished by apportionment. Upon review of the Workers' Compensation Act, the case law interpreting a previous disability as used in section 8–42–104(2), and the *AMA Guides*, it is clear that those provisions contemplate apportionment only when a prior disability, as defined by the *AMA Guides*, is a contributing factor to a subsequent industrial injury. Here, because Askew had an asymptomatic,

degenerative back condition, there was no prior disability as contemplated by the statutes and the *AMA Guides*, and apportionment was therefore inappropriate. Thus, we reverse the judgment of the court of appeals and remand for further proceedings consistent with this opinion.