COLORADO MENTAL HEALTH INSTITUTE and Colorado Compensation Insurance Authority, Petitioners,

v.

Barbara J. AUSTILL and The Industrial Claim Appeals Office of the State of Colorado, Respondents.

No. 96CA0812.

Colorado Court of Appeals,
Div. IV.

June 26, 1997.

Michael J. Steiner, Curt Kriksciun, Denver, for Petitioners.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder; Pepe J. Mendez & Associates, P.C., Pepe J. Mendez, Denver, for Respondent Barbara J. Austill.

No Appearance for Respondent Industrial Claim Appeals Office.

Opinion by Judge ROY.

In this workers' compensation case, petitioners, Colorado Mental Health Institute and its insurer, the Colorado Compensation Insurance Authority (CCIA), seek review of a final order of the Industrial Claim Appeals Office (Panel) which determined that they were solely liable for the permanent total disability benefits awarded to Barbara J. Austill (claimant). We set aside the order and remand for further proceedings.

Claimant had been employed full-time since 1981 as a medical transcriptionist when, in 1993, she developed carpal tunnel syndrome that prevented her from continuing in her employment. CCIA admitted that claimant suffers from an occupational disease, that she reached maximum medical improvement on June 28, 1994, and that she is permanently and totally disabled.

Claimant also suffers from, and had previously been diagnosed and treated for, bronchitis, obesity, pulmonary edema, and possible sleep apnea, was required to use oxygen at rest, and was limited to sedentary work. Because the carpal tunnel condition rendered her unable to return to sedentary work, she, at age 57, retired.

At the hearing before the Administrative Law Judge (ALJ), the parties stipulated that claimant suffered from an occupational disease, that she was permanently and totally disabled, and that her occupational disease contributed significantly to her disability. No testimony was taken.

CCIA argued, however, that claimant's pre-existing, non-industrial pulmonary condition contributed 50% to claimant's permanent total disability. On that basis, it requested that the ALJ apportion liability in accordance with § 8–42–104(2), C.R.S. (1996 Cum.Supp.).

Relying on *Lindner Chevrolet v. Industrial Claim Appeals Office*, 914 P.2d 496 (Colo.App.1995), the ALJ rejected the CCIA's request for apportionment concluding that, as a matter of law, under the "full responsibility rule" the employer bears full responsibility for the permanent total disability benefits that were awarded to claimant, minus any offset for disability retirement. On review, the Panel affirmed.

After the case was at issue and scheduled for oral argument in this court, our supreme court announced *Askew v. Industrial Claim Appeals Office*, 927 P.2d 1333 (Colo.1996). Oral argument was continued to permit supplemental briefing to consider the impact of *Askew*. Following the filing of supplemental briefs but prior to oral argument, a division of this court announced *Baldwin Construction, Inc. v. Industrial Claim Appeals Office*, 937 P.2d 895 (Colo.App.1997).

## I.

CCIA contends that the ALJ and the Panel erred in determining that claimant was entitled to full benefits under the "full responsibility rule." In light of *Askew* and *Baldwin*, we agree.

Section 8–42–104(2) states as follows:

*In case there is a previous disability, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury. In such cases awards shall be based on said computed percentage. Such computation, when applicable, shall be made in the following types of awards under articles 40 to 47 of*

this title: Permanent total, permanent partial, including scheduled, working unit and lump sum; except that, in the event the provisions of section 8–46–101 [Subsequent Injury Fund] are applicable, such apportionment shall not be made. (emphasis added)

In *Askew v. Industrial Claim Appeals Office, supra,* the supreme court addressed the apportionment issue under § 8–42–104(2) in a case involving permanent partial disability. In *Askew,* the claimant suffered an admitted work-related back injury while lifting a box of supplies to a shelf above his head. During treatment for the work-related injury, it was discovered that the claimant also suffered from asymptomatic osteoarthritic degenerative changes with intervertebral space narrowing in his spine with disc herniation and nerve impairment. Claimant had not been treated for these pre-existing conditions, the conditions had not been previously assigned a disability rating, and they may have remained asymptomatic indefinitely absent the work-related injury.

In its opinion, the supreme court carefully distinguished between "impairment" and "disability" as those terms are used in the *American Medical Association Guides to the Evaluation of Permanent Impairment* (AMA Guides) and the Workers' Compensation Act, respectively. "Impairment" is an alteration in a person's health status which can be assessed by medical means; and "disability" is an alteration of a person's capacity to meet personal, social, or occupational demands, and is assessed non-medically. Therefore, an "impairment" becomes a "disability" only when it manifests itself in a manner that alters the person's capacity to meet personal, social, or occupational demands.

The supreme court went further and, again relying on the *AMA Guides,* held that the pre-existing impairment must have been previously identified, treated, and evaluated in order to be rated as a contributing factor in the subsequent disability. Without having been previously identified, treated, and evaluated, any apportionment would be arbitrary.

In *Askew,* the claimant's degenerative back condition had been asymptomatic prior to the injury and, therefore, had not constituted a disability. On that basis alone, the supreme court held that apportionment of the degenerative back condition was not appropriate. The court further concluded that, for the same reason, any allocation would be arbitrary.

Here, claimant's pre-existing conditions were not asymptomatic prior to the onset of the occupational disease and had been previously diagnosed, treated, and evaluated and did limit her capacity to meet personal, social, or occupational demands. There is, however, no evidence that her ability to perform the duties of her sedentary employment on a full-time basis was limited by the pre-existing conditions.

In *Baldwin Construction, Inc. v. Industrial Claim Appeals Office, supra,* which dealt with permanent total disability, the claimant suffered an admitted industrial back injury but also suffered from pre-existing muscle tension headaches, obesity, depression, and alcohol abuse. The ALJ found that these pre-existing conditions did not limit claimant's ability to work full-time prior to the industrial injury and that, acting alone, they did not impact his future access to the job market and did not render him unemployable, but that they could affect his ability to deal with the pain occasioned by the industrial injury. The ALJ further found that the combination of the pre-existing conditions and the industrial injury did render the claimant permanently unemployable, unable to earn any wages, and totally disabled.

The *Baldwin* division held that, because the ALJ had found that the pre-existing conditions did not affect the claimant's ability to perform his job and did not limit his access to the job market prior to the industrial injury, apportionment was not appropriate.

Here, however, there remains a dispute as to whether, and to what extent, claimant's pre-existing conditions impacted her ability to earn a wage and to perform the same or other employment and a remand for further proceedings is necessary to resolve this issue.

## II.

Claimant urges that the apportionment contemplated in *Askew v. Industrial Claim*

*Appeals Office, supra,* should not be applied to her. We disagree.

### A.

■ Claimant first argues that *Askew v. Industrial Claim Appeals Office,* which dealt with permanent partial disability, should not be extended to permanent total disability because the definitions for permanent partial disability and permanent total disability differ materially.

■ Permanent partial disability is defined as a function of medical impairment as determined under the AMA Guides. Section 8–42–107, C.R.S. (1996 Cum.Supp.). Permanent total disability requires that the claimant be unable to earn any wages in the same or other employment and makes no reference to the AMA Guides. Section 8–40–201(16.5)(a), C.R.S. (1996 Cum.Supp.); *see Christie v. Coors Transportation Co.,* 933 P.2d 1330 (Colo.1997).

However, *Baldwin Construction* has already extended and applied *Askew* to permanent total disabilities and did so without discussing the implication, if any, of the differing definitions. The *Baldwin Construction* division did, however, limit apportionment under § 8–42–104(2) to those instances in which the pre-existing condition impacted claimant's ability to perform the job or the claimant's access to the job market. The inquiry is, therefore, limited to the claimant's ability to earn a wage at the same or other employment.

### B.

■ Claimant also argues that *Askew v. Industrial Claim Appeals Office, supra,* was wrongly decided in that it misapplies the apportionment statute, § 8–42–104(2), which was originally intended to apportion liability between employers without reducing the benefit to the claimant. This argument finds no direct support in the plain wording of the statute and invites us to hold contrary to the supreme court. We decline the invitation.

### C.

■ Finally, claimant argues that § 8–42–104(2) should not be applied to her because she suffers from an occupational disease, not an industrial injury as was the case in *Askew v. Industrial Claim Appeals Office, supra.* We are not persuaded.

■ An occupational disease arises not from an accident but from a prolonged exposure occasioned by the nature of the employment. Section 8–40–201(14), C.R.S. (1996 Cum.Supp.).

■ Employer liability for an occupational disease is placed on the last employer that injuriously exposed the claimant to the hazards which caused the occupational disease. Section 8–41–304, C.R.S. (1996 Cum. Supp.). Liability for an occupational disease is apportioned between employment related and non-employment related causes of the occupational disease without resorting to § 8–42–104(2). *Anderson v. Brinkhoff,* 859 P.2d 819 (Colo.1993).

Here, as in *Askew* and not *Brinkhoff,* the pre-existing disease is not the same disease or condition as the disabling occupational disease and is not, or apparently is not, an occupational disease. Therefore, § 8–41–304 has no application.

We can find no reason for treating disabilities caused by an accident differently from those caused by an occupational disease for apportionment purposes under § 8–42–104(2).

The ALJ and Panel did not have the benefit of the *Askew* and *Baldwin* decisions. Furthermore, no evidence was taken at the hearing nor were any findings made concerning whether claimant's pre-existing condition was sufficiently identified, treated, or evaluated to be rated as a contributing factor in the subsequent permanent total disability. Accordingly, this matter must be remanded for the presentation of evidence and further findings on the issue of whether, and to what extent, the pre-existing condition was itself disabling in that it impaired claimant's ability to perform her job or limited her access to the job market, thereby affecting her ability

to earn a wage at the same or other employment.

The order is set aside and the cause is remanded for further proceedings consistent with this opinion.

METZGER and HUME, JJ., concur.