**Corazon LOZA, Plaintiff–Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellant.**

**No. 96CA1610.**

Colorado Court of Appeals, Div. IV.

Nov. 13, 1997.

Rehearing Denied Jan. 15, 1998.

Certiorari Denied Sept. 8, 1998.

Hult Garlin Driscoll & Murray L.L.C., David J. Driscoll, Douglas T. Logsdon, Boulder, for Plaintiff–Appellee.

Seaman and Giometti, P.C., Gregory R. Giometti, Thomas J. Seaman, Denver, for Defendant–Appellant.

Opinion by Judge ROY.

Defendant, State Farm Mutual Automobile Insurance Company (State Farm), appeals

the summary judgment entered in favor of the plaintiff, Corazon Loza, (insured) for $6,423.90 premised on the court's determination that State Farm had breached the automobile insurance policy between it and the insured by failing to pay certain no-fault benefits. State Farm also appeals from an award of statutory treble damages for a willful and wanton breach of the insurance contract and from an award of damages for bad faith breach of an insurance contract. We affirm.

On November 4, 1992, insured was in an automobile accident shortly following which she was treated for various minor complaints including neck and back pain. On April 15, 1993, more than five months after the accident, insured told her treating physician that her jaw began to ache "one week ago suddenly while chewing." Her physician referred her to a dentist who began treating insured for temporomandibular joint dysfunction (TMD).

State Farm requested that insured submit to an independent medical examination (IME) with respect to the TMD treatment. The IME dentist expressed the opinion that insured had an extended pre-accident history of bruxism, or teeth grinding. The IME dentist further opined that the TMD was "30% due to the motor vehicle accident and 70% due to a parafunctional habit [bruxism] per Ms. Loza's current diagnosis." Based on the IME dentist's opinion, State Farm agreed to pay, and paid, 30% of the medical and dental expenses incurred by the insured for the treatment of TMD.

The bruxism had been previously detected by insured's treating dentist, who had referred her for treatment, but no treatment had been administered. There was no evidence that insured had suffered from any of the symptoms of TMD prior to the accident or that the TMD resulted from trauma suffered in the accident. Rather, the IME dentist's opinion was that the accident caused increased stress, which in turn exacerbated the bruxism, resulting in the TMD.

Thereafter, insured commenced these proceedings seeking unpaid medical and dental bills under the Colorado Auto Accident Reparations Act (the No-fault Act), § 10–4–701, et seq., C.R.S.1997, for the treatment of TMD, and seeking damages for the willful and wanton denial of Personal Injury Protection (PIP) benefits and for bad faith breach of insurance contract.

Insured filed a motion for partial summary judgment as to the breach of contract claim arguing there was no genuine issue as to any material fact. Insured asserted that it was undisputed that, while she may have been more susceptible to, or had a predisposition for, TMD, she had not suffered from TMD or any symptoms of TMD prior to the accident. The trial court granted insured's motion, entered judgment for the benefits withheld, and the parties proceeded to trial on the remaining claims.

The jury found that State Farm's conduct was willful and wanton based upon which the trial court awarded statutory treble damages. The jury further found State Farm had acted in bad faith breach of an insurance contract, and awarded damages.

I.

State Farm contends that the trial court erred in granting insured's motion for partial summary judgment on insured's breach of contract claim for benefits. We disagree.

Summary judgment is appropriate only when the movant clearly demonstrates that there is no genuine issue as to any material fact. C.R.C.P. 56; *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo.1995).

A material fact is one that affects the outcome of the case, and all doubts must be resolved against the moving party. *Moffat County State Bank v. Told*, 800 P.2d 1320 (Colo.1990). And, to defeat a summary judgment motion, the opposing party must submit evidence showing that a genuine issue for trial exists. C.R.C.P. 56(e).

Our review of a grant of summary judgment is *de novo. Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board, supra.*

At the time pertinent here, the No-fault Act required the insurer to pay:

Compensation without regard to fault, up to a limit of fifty thousand dollars per person for any one accident, for payment of all reasonable and necessary expenses for medical ... dental ... services ... performed within five years after the accident for bodily injury arising out of the use or operation of a motor vehicle....

Section 10–4–706(1)(b), C.R.S.1997.

The ultimate legal issue is whether State Farm can apportion no-fault benefits between an injury arising out of the use or operation of a motor vehicle and a predisposition to suffer the same injury from other causes. We conclude that no such apportionment is appropriate under the statute.

Insured testified in her deposition that she had not experienced any symptoms of TMD before the accident. State Farm's claim representative testified that she believed insured in that regard. The essence of the IME dentist's apportionment was that, while an individual with bruxism will not always develop TMD, there was only a 30% chance that a bruxism-free person would develop TMD as a result of this motor vehicle accident.

■ The purpose of the No-fault Act is to maximize, not minimize, insurance coverages, and to ensure that persons injured in automobile accidents are fully compensated. The No-fault Act is to be construed and applied to further its remedial and beneficent purposes. *Allstate Insurance Co. v. Smith*, 902 P.2d 1386 (Colo.1995).

■ The phrase "arising out of the use or operation of a motor vehicle" as used in the No-fault Act requires a causal connection between the use of the motor vehicle and the injury. *Truck Insurance Exchange v. Home Insurance Co.*, 841 P.2d 354 (Colo.App.1992). The causal connection described as "arising out of" is broader and more liberal than proximate cause as used in traditional tort law. *Kohl v. Union Insurance Co.*, 731 P.2d 134 (Colo.1986)(on account of the use); *Azar v. Employers Casualty Co.*, 178 Colo. 58, 495 P.2d 554, 555 (1972)("originated from," "grew out of," or "flowed from"); *State Farm Mutual Automobile Insurance Co. v. McMillan*, 900 P.2d 1243 (Colo.App.1994) (uninsured motorist coverage).

We are not aware of any case dealing with apportionment in the no-fault context between an injury arising out of the operation of the motor vehicle and a related pre-existing non-symptomatic condition.

State Farm relies on *Rodgers v. Progressive Specialty Insurance Co.*, 499 N.W.2d 61 (Minn.App.1993). *Rodgers*, however, is not particularly helpful because there the insured had been involved in two accidents, and had separate or identifiable injuries from each accident for which she was receiving treatment. The court held that the no-fault coverage was accident specific and the carrier need pay no-fault benefits only for injuries sustained in the second accident. While we may agree with the basic rationale of *Rodgers*, that case dealt with an identified previous injury sustained by the insured which had been treated and, therefore, could be apportioned.

We note the similarity in language in the workers' compensation statute, which provides that benefits are payable for injuries "*arising out of* and in the course of *the employee's employment.*" Section 8–41–301, C.R.S.1997 (emphasis added). Workers' compensation law also provides defined benefits without regard to fault.

While relying upon analogies to workers' compensation law in other legal arenas is fraught with peril, we find guidance in the rationale of *Askew v. Industrial Claim Appeals Office*, 927 P.2d 1333 (Colo.1996).

In *Askew*, the claimant had a pre-existing, non-symptomatic, degenerative back condition and then suffered a low back injury while lifting in the course of his employment. The workers' compensation carrier sought to apportion the work-related injury against the pre-existing condition under a statute which specifically permitted allocation against a previous disability, and provided a method for making that allocation. Our supreme court held that it was inappropriate to apportion disability because any apportionment would of necessity be arbitrary, since there was no assurance that the pre-existing condition would ever have become symptomatic absent the accident, and there was no prior course of treatment, symptoms, or limitations

upon which to predicate an apportionment. *See also Colorado Mental Health Institute v. Austill,* 940 P.2d 1125 (Colo.App.1997).

The speculative or arbitrary nature of the apportionment in this case is evident in the deposition testimony of the IME dentist. The IME dentist did not apportion based on the relative cost of treatment or severity of symptoms before and after the accident, as neither had occurred before the accident. Nor did that dentist apportion on the chances that a patient with insured's bruxism would ultimately suffer from TMD absent the accident, as he had no opinion as to whether the insured would have ultimately so suffered. Rather, the IME dentist apportioned based on the chance that a bruxism-free individual would not have suffered TMD as a result of this accident based on the severity of the impact. He offered no statistical data, however, to support this allocation and in fact indicated that no such data was available.

State Farm further argues that the granting of the motion for partial summary judgment foreclosed it from presenting evidence and argument that there was no actual causal relationship between the accident and the TMD. In support of this argument, State Farm relies on the undisputed fact that the TMD did not manifest itself until over five months after the accident and then only when the insured was chewing. State Farm, however, did not rely on or assert any of these reasons in its letter denying benefits or at any time prior to the litigation. *See Colard v. American Family Mutual Insurance Co.,* 709 P.2d 11 (Colo.App.1985). In addition, this position is fundamentally inconsistent with the opinion of State Farm's IME dentist upon whom it placed sole reliance, both in initially apportioning benefits and at trial.

■ Under these circumstances, we hold that an automobile insurance carrier cannot apportion PIP benefits for an insured's injury arising out of the operation or use of a motor vehicle simply because insured has a pre-existing predisposition to suffer the same injury. Therefore, the granting of the partial summary judgment was proper.

## II.

State Farm next contends that the trial court erred in submitting to the jury the following jury instruction:

> In determining the amount of plaintiff's reasonable and necessary medical expenses arising out of the use or operation of a motor vehicle, State Farm may not refuse to pay any such expenses because of any physical frailties of the plaintiff that may have made her more susceptible to injury, disability or impairment.

We conclude there was no error in giving this instruction.

■ The "thin skull" plaintiff rule is a tort concept which prevents a tortfeasor from arguing that the plaintiff's injuries would have been less severe had the plaintiff not been more susceptible to injury. *Schafer v. Hoffman,* 831 P.2d 897 (Colo.1992). In other words, the tortfeasor takes the plaintiff as is.

■ A division of this court has held that it is appropriate to give the above instruction in a breach of insurance contract action. *Peiffer v. State Farm Mutual Automobile Insurance Co.,* 940 P.2d 967 (Colo.App.1996) (cert. granted July 28, 1997). The apparent rationale of *Peiffer* is that an insurer responsible for providing PIP benefits takes the insured injured party as it finds him or her.

We are persuaded by the rationale of *Peiffer,* and follow it.

## III.

State Farm next contends that the trial court committed reversible error by refusing to admit evidence that State Farm paid in excess of $30,000 in PIP benefits on a timely basis, and evidence that the insured had received in excess of $50,000 in personal injury settlements with the other driver and underinsured motorist benefits, both from State Farm. We disagree.

We note at the outset that, during cross-examination, insured testified that she had resolved other claims against the other driver and State Farm. She further stated that she had paid the share of the TMD treatment costs apportioned to her by State Farm, that her credit rating had not been

damaged, that she had received all of the recommended treatment for the TMD, and that she had been treated for other injuries or complaints arising out of the accident.

### A.

With respect to the amount of PIP benefits paid by State Farm without objection, insured argued to the trial court that the evidence should be excluded because it was irrelevant pursuant to CRE 401, and that the prejudice outweighed any relevancy pursuant to CRE 403.

In its pleadings, State Farm argued the evidence should be admitted to rebut the insured's claims for emotional distress and to show duplicative treatments which were not reasonable and necessary. At the hearing, however, the issue was narrowed to whether the evidence was admissible to show State Farm acted in good faith with respect to many other claims, to rebut insured's contention that it acted in bad faith in failing to pay a particular claim.

As the trial court stated:

THE COURT: The question really here is whether State Farm can use payments as evidence of good faith as a defense for bad faith nonpayment.

[STATE FARM'S COUNSEL]: That's what it boils down to.

THE COURT: The way I would look at this is that would it be proper for a jury to say, well, they have paid a lot of claims, and so we think State Farm was acting in good faith generally, therefore, they couldn't have been acting in bad faith with regard to this one particular bill either. There has to be nonpayments generally and general bad faith or there is no bad faith.

I don't think I would allow that. It would not be proper for a jury to say that. I think that they need to decide whether the ... nonpayment of this particular bill was in bad faith or not, because, otherwise, an insurance company gets the benefit of a finding of good faith any time they—they pay a large number of the bills even if there's evidence that shows that the nonpayment of a particular bill was done in

bad faith. So I don't think that evidence is admissible.

 While no rule of evidence was cited by the trial court in rejecting the evidence, we conclude that the evidence was either rejected as irrelevant pursuant to CRE 401 or that any relevance was outweighed by the prejudicial impact under CRE 403. . Either such determination is addressed to the sound discretion of the trial court, and absent a showing that the trial court's decision was manifestly arbitrary, unreasonable, and unfair, it will be upheld. *People v. Moya*, 899 P.2d 212 (Colo.App.1994).

 In light of the circumstances of this case and the rationale of the trial court, we conclude that it was well within its discretion in rejecting the evidence.

### B.

Insured's motion in limine also sought the exclusion of the amount of settlement of her personal injury claim and underinsured motorist's claims on the grounds that their probative value was outweighed by their prejudicial effect. We conclude there is no reversible error in granting the motion.

 Again, this issue is addressed to the sound discretion of the trial court. *People v. Moya, supra*. However, a division of this court held in *Peiffer v. State Farm, supra*, that it was an abuse of discretion to exclude evidence of settlement amounts received by an insured when the insured alleges emotional distress as an element of damage in a bad faith claim. Addressing the issue for purposes of guidance on remand, the division held that the amounts paid to the insured, and presumably available to the insured to pay medical bills, should have been admitted as they related directly to the reasonableness of insured's claim of emotional distress.

Here, State Farm was permitted to introduce evidence that the insured had "resolved" those claims, that she had paid all of the TMD treatment expenses apportioned by State Farm, that she had received all of the recommended TMD treatment, and that her credit rating had not been damaged by State Farm's failure to pay. Thus, State Farm

was able to show that insured had paid the bills from funds available to her. The fact that the jury was not advised as to the amount of money available to her for that purpose, or its source, does not require reversal.

## IV.

State Farm finally argues that it was highly prejudicial for the trial court to instruct the jury that 1) State Farm was obligated to pay the disputed bills and 2) the court had entered judgment on insured's breach of contract claim. State Farm also argues that the subsequent judgment for the insured for treble damages and bad faith must be reversed because the trial court erred in entering judgment on insured's breach of contract claim. We disagree.

Initially, inasmuch as the latter half of State Farm's contention on this point appears to repeat its earlier argument that partial summary judgment should not have been granted, we have already rejected that argument.

■■■ A jury instruction should not be given if it diverts the jury from actual factual disputes. Although an instruction which recites all of the elements of a cause of action is proper, an instruction should not require proof of matters not in controversy. *Koehn v. R.D. Werner Co.*, 809 P.2d 1045 (Colo.App. 1990).

■■ The fact that State Farm breached its insurance contract with the insured is an element of the bad faith claim. To have not instructed the jury that State Farm's breach and the amount it owed had already been determined would have required the jury to consider the remaining issues with little or no guidance. Under such circumstances, the possibility would exist that the jury might reach a verdict contrary to the trial court's judgment.

Therefore, we see no error in instructing the jury that State Farm had breached the insurance contract and the amount of benefits owing as a result of that breach.

Judgment affirmed.

NEY and MARQUEZ, JJ., concur.