**ABSOLUTE EMPLOYMENT SERVICES, INC., and Colorado Compensation Insurance Authority, Petitioners,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO and John G. Reasor, Respondents.**

No. 98CA1200.

Colorado Court of Appeals, Div. III.

Sept. 16, 1999.

Rehearing Denied Oct. 21, 1999.

Certiorari Denied April 24, 2000.

Laurie A. Schoder, Denver, Colorado, for Petitioners.

Regina M. Walsh Adams, Greeley, Colorado, for Respondent John G. Reasor.

No Appearance for Respondent Industrial Claim Appeals Office.

Opinion by Judge ROY.

Employer, Absolute Employment Services, Inc., and its insurer, Colorado Compensation Insurance Authority, (collectively CCIA) seek review of a final order of the Industrial Claim Appeals Office (Panel) awarding John G. Reasor (claimant) permanent total disability (PTD) benefits without apportionment for the effects of congenital conditions and prior industrial injuries. We affirm.

Claimant sustained a compensable back injury in August 1993 while performing heavy labor for employer. He has been unable to return to work subsequent to that injury, and it is undisputed that he is permanently and totally disabled.

Since birth, claimant has been legally blind, that is, totally blind in one eye and $20/40$ in the other. He also suffers from an intellectual deficit indicated by a low measured intelligence quotient (IQ), that is, a verbal IQ of 64 and a non-verbal IQ of 74. CCIA's vocational expert opined that these congenital conditions precluded claimant from access to 88% of the labor market.

Claimant had also sustained two prior industrial injuries, one to the hand in 1985 and another to the back in March 1993, which resulted in awards of permanent partial disability but which did not limit his ability to perform his duties for employer.

The Administrative Law Judge (ALJ) declined CCIA's request to apportion the PTD benefits to account for claimant's congenital blindness and low IQ. The ALJ reasoned that these conditions do not constitute apportionable disabilities because they did not "alter" claimant's ability to meet personal, social, or occupational demands. Rather, the ALJ determined that these conditions constituted non-apportionable "handicaps" as defined by the American Medical Association, *Guides to the Evaluation of Permanent Impairment* (rev.3d ed. 1991) (AMA Guides).

The ALJ also rejected CCIA's contention that the PTD benefits should be apportioned based on the prior hand and back injuries. The ALJ stated that, although these injuries may have resulted in "impairments," the evidence fails to provide "any explanation as to how the claimant was disabled as a result" of these injuries. In support of this conclusion the ALJ noted that, after both injuries, claimant returned to his pre-injury duties.

The Panel affirmed the ALJ's denial of apportionment for both the congenital conditions and the prior industrial injuries.

## I.

CCIA contends that the ALJ erred in failing to reduce the PTD benefits to account for the effects of claimant's blindness and low IQ. It argues that regardless of whether claimant's congenital problems constitute "handicaps" within the meaning of the AMA Guides, they represent apportionable "disabilities." We perceive no error.

Apportionment is governed by Colo. Sess. Laws 1990, ch. 62, § 1 at 490 (§ 8–42–104(2)), which then provided as follows:

In case there is a previous disability, the percentage of disability for a subsequent injury shall be determined by computing the percentage of the entire disability and deducting therefrom the percentage of the previous disability as it existed at the time of the subsequent injury.

As a general matter, interpretation of this statute requires us to give effect to the legislative intent. To the extent the statute is ambiguous, we should construe it in the context of the Workers' Compensation Act as a whole so as to give consistent, harmonious, and sensible effect to all its parts. Further, we must assume the General Assembly intended a just and reasonable result. *Bowland v. Industrial Claim Appeals Office*, 984 P.2d 660 (Colo.App.1998).

Benefits under our statute payable for unscheduled injuries, as here, are "medical impairment benefits" determined in accordance with the AMA Guides. Section 8–42–107(8)(b.5)(I)(A), C.R.S.1999.

The AMA Guides state:

The accurate and proper use of medical information to assess impairment depends on the recognition that, whereas impairment is a medical matter, disability arises out of the interaction between impairment and external demands, especially those of an individual's occupation. As used in the *Guides*, 'impairment' means an alteration of an individual's health status that is *assessed by medical means*, 'disability,' *which is assessed by nonmedical means*, is an alteration of an individual's capacity to meet personal, social, or occupational demands or statutory or regulatory requirements. Stated another way, 'impairment' is what is wrong with a body part or organ system and its functioning; 'disability' is the gap between what the individual *can* do and what the individual *needs* or *wants* to do. (emphasis in original)

The AMA Guides also discuss the concept of "handicap" as it relates to "disability" or "impairment":

The concept of 'handicap' is related to, yet independent of, the terms 'impairment' and 'disability,' although some use it interchangeably with these terms.

. . . .

As a practical matter, a 'handicap' may be understood to exist in association with a 'barrier' or obstacle to functional activity. An individual with limited functional capac-

ity is handicapped if there are barriers to accomplishing life's tasks that can be overcome only by compensating in some way for the effects of an impairment. Such compensation, or 'accommodation,' normally entails the use of assistive devices such as crutches, wheelchairs, hearing aids, optical magnifiers, prostheses, or special tools or equipment; modification of the environment; modification of tasks or activities, such as segmenting them or increasing the time for the completion; or a combination of these approaches.

If an individual is not able to accomplish a task or activity despite accommodation, or if there is no accommodation that will enable completion of the task, that individual is both handicapped and disabled. But an impaired individual who is able to accomplish a task with or without accommodation is neither handicapped nor disabled with regard to that task.

AMA Guides, § 1.0 at 1–2.

In *Askew v. Industrial Claim Appeals Office,* 927 P.2d 1333 (Colo.1996), the claimant suffered a lower back injury in the course of his employment. During treatment it was discovered that he also suffered from a degenerative spinal condition which was asymptomatic and had never been treated. The employer sought to apportion between the employment injury and the pre-existing degenerative condition.

In denying apportionment, the supreme court made reference to the AMA Guides for the purpose of defining "disability" as used in § 8–42–104(2) and held that a "disability, which is assessed by nonmedical means is 'an alteration of an individual's capacity to meet personal, social, or occupational demands.'" An "impairment," on the other hand, means "an alteration of an individual's health status that is assessed by medical means." *Askew v. Industrial Claim Appeals Office, supra,* 927 P.2d at 1337. *See also Lambert & Sons, Inc. v. Industrial Claim Appeals Office,* 984 P.2d 656 (Colo.App.1998).

The court also noted that apportionment does not apply in cases where the prior condition was not a disability in the compensation sense. *Askew v. Industrial Claim Appeals Office, supra.*

The *Askew* definition of an apportionable disability has been applied to PTD cases, and it has been held that apportionment is proper where the pre-existing condition affected the claimant's ability to perform his job, or limited his access to the labor market prior to the industrial injury. *Colorado Mental Health Institute v. Austill,* 940 P.2d 1125 (Colo.App. 1997).

However, neither *Askew* nor its progeny addresses the question whether purely congenital conditions, which are uninfluenced by injuries or deterioration after birth, constitute "disabilities" within the meaning of § 8–42–104(2). *But see Mathews v. Industrial Commission,* 144 Colo. 146, 355 P.2d 300 (1960) (affirming the denial of apportionment between an industrial injury and preexisting congenital condition, *not* because the condition was congenital, but because the proposed apportionment was based on an arbitrary, speculative medical opinion).

■ We do not read § 8–42–104(2) to mean that an apportionable "disability" may result from a purely congenital condition not affected by circumstances subsequent to birth. If this were a valid reading of that section, few PTD cases would not be subject to apportionment. This is true because few people have access to the entire labor market. Rather, most persons are subject to some physical or mental limitations, which, though within normal limits, limit to some extent the spectrum of personal, social, and occupational choices.

■ Consequently, we agree with the Panel that the most plausible reading of § 8–42–104(2) is that the General Assembly recognized that individual claimants are born with different physical and mental aptitudes and, therefore, with a baseline access to the labor market which is limited. Thus, an apportionable "disability" arises when the claimant's baseline access to the labor market is reduced by injuries, illness, or aging processes.

■ This conclusion is supported by an examination of the Act as a whole. In determining whether a claimant is permanently and totally disabled within the meaning of § 8–40–201(16.5)(a), C.R.S.1999, it is proper

to consider various "human factors." *Weld County School District RE–12 v. Bymer,* 955 P.2d 550, 554–55 (Colo.1998). As was the law prior to the adoption of § 8–40–201(16.5)(a), these factors include the claimant's general physical condition, mental ability, age, employment history, education, and the availability of work which the claimant can perform.

Because an ALJ may consider a claimant's individual "human factors," it is apparent the General Assembly appreciated that each individual claimant is born with a different capacity to earn wages, depending on his or her particular mental and physical attributes. Consequently, it would be neither logical nor just to read § 8–42–104(2) as treating a claimant's congenital mental or physical conditions as apportionable disabilities under that statute.

We also agree with the Panel's conclusion that purely congenital conditions or circumstances, uninfluenced by intervening causes, do not represent "alterations" of a claimant's ability to meet personal, social, or occupational demands. To the contrary, such conditions represent a claimant's baseline capacity to meet personal, social, and occupational demands. Therefore, the result we reach here is consistent with the definition of "disability" set forth in *Askew.*

Further, our conclusion is influenced by the statutory scheme for the payment of PTD benefits. These benefits are based on a percentage of the claimant's average weekly wage, which, in turn, is based on the claimant's earnings at the time of the injury. Sections 8–42–111(1) & 8–42–102(2), C.R.S. 1999.

■ Here, the testimony is that the claimant's access to the labor market was extremely limited by his congenital handicaps which, in most, if not all, instances would be reflected in the wage the claimant is capable of commanding. At the time of the injury here, claimant was able to earn wages entitling him to benefits at the rate of $160 a week, a rate that implicitly takes into account the effect of his congenital conditions on his earning ability. Thus, it would be inappropriate to reduce his benefits a second time by application of a factor derived from the effect of the disabilities which the claimant has had since birth.

■ We recognize that the purposes of § 8–42–104(2) include ensuring that employers pay only those costs attributable to the "subsequent injury," and encouraging employers to hire partially disabled workers. *Waddell v. Industrial Claim Appeals Office,* 964 P.2d 552 (Colo.App.1998). However, we do not think these statutory objectives are served by treating claimants as disabled from birth. Rather, we view § 8–42–104(2) as addressing these objectives when the claimant's pre-existing condition is a disability in the compensation sense.

Finally, we note that, in the event the claimant is entitled to disability benefits pursuant to the Federal Old-age, Survivors, and Disability Insurance Act, the workers' compensation benefit is reduced in proportion to the federal benefit. Section 8–42–103(1)(c)(I), C.R.S.1999. This reduction in benefit does, in effect, work an apportionment with a claimant's pre-existing condition in the event he or she is disabled after the industrial accident to an extent making him or her eligible for the federal benefit.

To summarize, all persons have an innate baseline earning capacity or access to the labor market. This access may be less than total, and represents a claimant's optimum potential earning capacity considering his or her physical and mental attributes. Apportionment under § 8–42–104(2) is appropriate when the claimant's baseline earning capacity or access to the labor market is reduced by events occurring subsequent to birth, but prior to the industrial injury in question.

Thus, we find no error in the failure to apportion the PTD benefits based on claimant's purely congenital conditions. As the ALJ recognized, claimant's baseline access to the labor market was narrowly restricted from the time of birth. In view of that narrow restriction, the cause of claimant's PTD, that is, his inability to earn any wages in view of the available alternatives, is the August 1993 industrial back injury.

## II.

CCIA next contends that the ALJ erred in failing to apportion the PTD benefits based on claimant's prior industrial injuries. CCIA points out that the claimant experienced ongoing pain after both of these injuries, and was wearing a back brace from the March 1993 back injury at the time of the August 1993 back injury. Under such circumstances, CCIA argues that claimant's return to regular employment after each injury is insufficient to defeat the claim for apportionment because his access to the labor market was adversely affected by the prior injuries. CCIA also asserts that the ALJ applied an incorrect standard of law because the claimant's return to work is not, in and of itself, sufficient to establish whether the prior injuries caused a loss of access to the labor market. We are not persuaded.

█ The question of whether prior injuries are "disabling" for purposes of § 8-42-104(2) is largely one of fact for determination by the ALJ. *Baldwin Construction, Inc. v. Industrial Claim Appeals Office*, 937 P.2d 895 (Colo.App.1997).

█ An apportionable disability is one which adversely impacts the claimant's ability to perform his job, or limits the claimant's access to other jobs in the labor market. *Colorado Mental Health Institute v. Austill, supra; cf. Lambert & Sons, Inc. v. Industrial Claim Appeals Office, supra* (apportionment is not appropriate when a claimant is issued a medical impairment rating for a previous injury, and prior to the second injury the claimant's condition improves to the point that he or she no longer suffers from that disability).

█ Further, the employer bears the burden of proving grounds for apportionment. *See Cowin & Co. v. Medina*, 860 P.2d 535 (Colo.App.1992). The question whether employer carried that burden is itself one of fact for determination by the ALJ. *See Metro Moving & Storage Co. v. Gussert*, 914 P.2d 411 (Colo.App.1995).

█ Here, the ALJ found that CCIA failed to carry its burden of proof to explain how claimant was disabled by the prior hand injury or back injury. In support, the ALJ found that, after each injury, claimant returned to the same type of work he performed prior to the injury. Moreover, the ALJ found that both of the jobs involved "physical labor," and this finding is supported by claimant's testimony. Finally, CCIA points to no evidence indicating claimant was permanently restricted from returning to either of the jobs.

Under these circumstances, the evidence supports the determination that CCIA presented insufficient evidence to prove claimant was disabled by either of these prior injuries.

Although there may be some evidence in the record from which the ALJ could have drawn an inference that there was apportionable disability, he certainly was not compelled to find this evidence persuasive on the record present here. Consequently, the evidence supports the ALJ's refusal to apportion. *Baldwin Construction, Inc. v. Industrial Claim Appeals Office, supra.*

Similarly, the ALJ's order reflects no misapplication of the law. Claimant's ability to continue performing the same type of work which he performed prior to the injury constitutes substantial evidence in opposition to a finding of apportionable disability. *Baldwin Construction, Inc. v. Industrial Claim Appeals Office, supra.*

The order of the Panel is affirmed.

Judge JONES and Judge MARQUEZ, concur.